# No. 23-50862

# In the United States Court of Appeals for the Fifth Circuit

Jerry Clayton Gift,
*Plaintiff-Appellant*

v.

Anadarko Petroleum Corporation Change of Control Severance Plan; Occidental Petroleum Corporation; Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee,
*Defendants-Appellees*

On Appeal from the United States District Court for the Western District of Texas, Midland-Odessa Division
Civil Action No. MO: 22-CV-00122-DC

# RECORD EXCERPTS OF APPELLANT JERRY CLAYTON GIFT

Amy E. Gibson
amy@gwfirm.com
Texas Bar No. 00793801
David L. Wiley
david@gwfirm.com
Texas Bar No. 24029901
Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201-4923
T: (214) 522-2121
F: (214) 522-2126
*Attorneys for Appellant Jerry Clayton Gift*

TABLE OF CONTENTS

**Tab**                                                                                    **ROA**

Tab 1 Docket Sheet………………………………………..…………………...ROA.1-9

Tab 2 Notice of Appeal……………………...………….…………..ROA.1912-1915

Tab 3 Order………………………………………………………….ROA.1899-1910

Tab 4 Final Judgment……………………………………….……………..ROA.1911

Tab 5 Excerpt: COC Plan Purpose and
        Good Reason Definition at Issue………………………….ROA.1628, 1633

Tab 6 Excerpts: Plan Interpretation Guidance on
        Good Reason Definition at Issue……..ROA.1666, 1668-1669, 1670, 1672-1673

Tab 7 Declaration of David Gale,
        Then-Current Head of OCC…………………………......…..ROA.1553-1564

Tab 8 Declaration of Jerry Gift…………………………………….ROA.1566-1571

Tab 9 Excerpts: Good Reason Inquiry…………..………ROA.1540-1543, 1697, 1690

Tab 10 Excerpts: Submitted Materials for
         Claim Under COC Plan…………………………….ROA.392, 405-406, 410

Tab 11 Excerpts: Submitted Materials for
         Appeal Under COC Plan……………………………………ROA.521-524

Respectfully submitted,

*s/ Amy Gibson*

Amy E. Gibson
Texas Bar No. 00793801
amy@gwfirm.com

David L. Wiley
Texas Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201-4923
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Appellant Jerry Clayton Gift*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on February 27, 2024, she filed the foregoing document with the Fifth Circuit Court of Appeals, through the CM/ECF Document Filing System, such that the foregoing document should be served on all parties through their counsel of record, who are registered CM/ECF users, as follows:

**<u>Via CM/ECF</u>**

Ms. Kristina Williams
kristina.williams@nortonrosefulbright.com
Ms. Shauna Johnson Clark
shauna.clark@nortonrosefulbright.com
Ms. Kimberly F. Cheeseman
kimberly.cheeseman@nortonrosefulbright.com
Mr. Andrew Yeh
andrew.yeh@nortonrosefulbright.com

Norton Rose Fulbright US LLC
1301 McKinney #5100
Houston, Texas 77010-3095

*Attorneys for Appellees*

*s/ Amy Gibson*

_____
Amy E. Gibson

# Tab 1

# District Court Docket Sheet ROA.1-9

APPEAL

# U.S. District Court [LIVE]
## Western District of Texas (Midland)
## CIVIL DOCKET FOR CASE #: 7:22-cv-00122-DC-RCG

Gift v. Anadarko Petroleum Corporation Change of Control Severance Plan et al
Assigned to: Judge David Counts
Referred to: Judge Ronald C. Griffin
Case in other court:        District Court of Andrews County, Texas, 109th

5th USCA, 23-50862
Cause: 28:1446 Petition for Removal - ERISA

Date Filed: 05/20/2022
Date Terminated: 10/30/2023
Jury Demand: None
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**Jerry Clayton Gift**                     represented by **David L Wiley**
Gibson Wiley PLLC
1500 Jackson Street
Suite 109
Dallas, TX 75201-4923
(214) 522-2121
Fax: (214) 522-2126
Email: david@gwfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul H. Millican**
Gossett, Harrison, Millican & Stipanovic, P.C.
P. O. Drawer 911
San Angelo, TX 76902-0911
(325) 653-3291
Fax: (325) 655-6838
Email: paulm@ghtxlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amy Elizabeth Gibson**
Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, TX 75201
(214) 522-2121
Fax: (214) 522-2126
Email: amy@gwfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Anadarko Petroleum Corporation Change of Control Severance Plan** | represented by | **Andrew Yeh** Norton Rose Fulbright US LLP 1301 McKinney St., Suite 5100 Houston, TX 77010 (713) 651-5151 Fax: (713) 651-5246 Email: andrew.yeh@nortonrosefulbright.com *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **Kimberly Frances Cheeseman** Norton Rose Fulbright US LLP 1301 McKinney Ste 5100 Houston, TX 77010 713-651-5160 Fax: 713-651-5246 Email: kimberly.cheeseman@nortonrosefulbright.com *ATTORNEY TO BE NOTICED* |
| | | **Shauna Johnson Clark** Norton Rose Fulbright US LLP 1301 McKinney Suite 5100 Houston, TX 77010-3095 (713) 651-5601 Fax: 713-651-5246 Email: shauna.clark@nortonrosefulbright.com *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Occidental Petroleum Corporation** | represented by | **Andrew Yeh** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **Kimberly Frances Cheeseman** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Shauna Johnson Clark** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee** | represented by | **Andrew Yeh** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |

**Kimberly Frances Cheeseman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shauna Johnson Clark**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/20/2022 | 1 (p.10) | NOTICE OF REMOVAL by Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation, Anadarko Petroleum Corporation Change of Control Severance Plan (Filing fee $402 receipt number 0542-16056962), filed by Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation, Anadarko Petroleum Corporation Change of Control Severance Plan. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.59) Exhibit B, # 3 (p.61) Exhibit C, # 4 (p.63) Exhibit D, # 5 (p.64) Exhibit E, # 6 (p.65) Exhibit F, # 7 (p.69) Exhibit G, # 8 (p.71) Civil Cover Sheet)(Clark, Shauna) (Entered: 05/20/2022) |
| 05/20/2022 | | Case assigned to Judge David Counts and Judge Ronald C. Griffin. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (jb3) (Entered: 05/23/2022) |
| 05/23/2022 | 2 (p.59) | ORDER TO AMEND PLEADINGS. Signed by Judge David Counts. (jb3) (Entered: 05/23/2022) |
| 05/23/2022 | 3 (p.61) | ORDER AND ADVISORY. Signed by Judge David Counts. (jb3) (Entered: 05/23/2022) |
| 05/23/2022 | 4 (p.63) | Pro Hac Vice Letter to **Attorney Paul Millican**. (jb3) (Entered: 05/23/2022) |
| 05/23/2022 | 5 (p.64) | Pro Hac Vice Letter to **Attorney Andrew Yeh**. (jb3) (Entered: 05/23/2022) |
| 05/31/2022 | 6 (p.65) | MOTION to Appear Pro Hac Vice by Paul H. Millican ( Filing fee $ 100 receipt number 120). (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (jb3) (Entered: 05/31/2022) |
| 06/01/2022 | | Text Order GRANTING 6 (p.65) Paul H. Millican's Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice Pro Hac Vice in this case must register for electronic filing with our Court within 10 days of this Order. It is further ORDERED that if Mr. Millican has not already done so, shall immediately tender the amount of $100.00, made payable to: Clerk, U.S. District Court, in compliance with Local Court Rule AT-1(f)(2). Entered by Judge Ronald C. Griffin. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 06/01/2022) |
| 06/02/2022 | 7 (p.69) | ***CONSTRUED AS MOTION FOR EXTENSION OF TIME TO FILE PURSUANT TO ORDER 9 (p.75)*** ***STIPULATION *Regarding Defendants' Amended Answer Deadline to Plaintiff's Original Petition* by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation |

| | | |
|---|---|---|
| | | Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Cheeseman, Kimberly) Modified on 6/9/2022 (jb3). (Entered: 06/02/2022) |
| 06/03/2022 | 8 (p.71) | MOTION to Appear Pro Hac Vice by Kimberly Frances Cheeseman *for Andrew Yeh* (Receipt #0542-16093295) by on behalf of Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Cheeseman, Kimberly) (Entered: 06/03/2022) |
| 06/06/2022 | | Text Order GRANTING 8 (p.71) Andrew Yeh's Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice Pro Hac Vice in this case must register for electronic filing with our Court within 10 days of this Order. It is further ORDERED that if Mr. Yeh has not already done so, shall immediately tender the amount of $100.00, made payable to: Clerk, U.S. District Court, in compliance with Local Court Rule AT-(f)(2). Entered by Judge Ronald C. Griffin. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 06/06/2022) |
| 06/09/2022 | 9 (p.75) | ORDER GRANTING 7 (p.69) Motion for Extension of Time to File. Signed by Judge Ronald C. Griffin. (jb3) (Entered: 06/09/2022) |
| 06/10/2022 | 10 (p.77) | *Amended* ANSWER to Complaint by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation.(Clark, Shauna) (Entered: 06/10/2022) |
| 07/18/2022 | 11 (p.90) | NOTICE of Attorney Appearance by Amy Elizabeth Gibson on behalf of Jerry Clayton Gift. Attorney Amy Elizabeth Gibson added to party Jerry Clayton Gift(pty:pla) (Gibson, Amy) (Entered: 07/18/2022) |
| 07/19/2022 | 12 (p.93) | Unopposed MOTION for Extension of Time to File *Proposed Scheduling Order and Joint Rule 26 Report* by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Clark, Shauna) (Entered: 07/19/2022) |
| 07/20/2022 | | Text Order GRANTING 12 (p.93) Parties' Joint Motion for Extension of Time to File Scheduling Recommendations. It is ORDERED the Parties will have until August 2, 2022, to file proposed scheduling recommendations and Joint Rule 26 Report. It is so ORDERED. Entered by Judge Ronald C. Griffin. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 07/20/2022) |
| 07/20/2022 | | Set/Reset Deadlines: Scheduling Recommendations/Proposed Scheduling Order due by **8/2/2022** (kg) (Entered: 07/20/2022) |
| 08/02/2022 | 13 (p.98) | Rule 26(f) Discovery Report/Case Management Plan by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Clark, Shauna) (Entered: 08/02/2022) |
| 08/02/2022 | | |

| | | |
|---|---|---|
| | 14 (p.118) | Proposed Scheduling Order by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Clark, Shauna) (Entered: 08/02/2022) |
| 08/08/2022 | 15 (p.122) | SCHEDULING ORDER: Pretrial Conference set for **9/14/2023 01:30 PM** in Midland before Judge David Counts; Jury Selection/Trial set for **10/2/2023 08:00 AM** in Midland before Judge David Counts; Amended Pleadings/Joinder of Parties due by 12/20/2022; Discovery due by 5/9/2023; Dispositive Motions due by 5/23/2023. Signed by Judge David Counts. (jb3) (Entered: 08/09/2022) |
| 02/28/2023 | 16 (p.124) | Unopposed MOTION to Extend Scheduling Order Deadlines *[Unopposed Motion to Extend Expert Designation and Disclosure Deadlines and Brief in Support]* by Jerry Clayton Gift. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Gibson, Amy) (Entered: 02/28/2023) |
| 03/01/2023 | | Text Order GRANTING 16 (p.124) Plaintiff's Unopposed Motion to Extend Scheduling Order Deadlines. It is ORDERED the Court's Scheduling Ordered is AMENDED as follows: All parties asserting claims for relief shall file their designation of testifying experts and shall serve on all parties, but not file, the materials required by Fed. R. Civ. P. 26(a)(2)(B) by 3/21/2023. Parties resisting claims for relief shall file their designation testifying experts and shall serve on all parties, but not file the materials required by Fed. R. Civ. P. 26(a)(2)(B) by 5/9/2023. All designations of rebuttal experts shall be designated within fourteen (14) days of receipt of the report of the opposing expert. It is so ORDERED. Entered by Judge Ronald C. Griffin. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 03/01/2023) |
| 03/21/2023 | 17 (p.130) | DESIGNATION OF EXPERT WITNESSES by Jerry Clayton Gift. (Gibson, Amy) (Entered: 03/21/2023) |
| 03/21/2023 | 18 (p.135) | DESIGNATION OF EXPERT WITNESSES by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.59) Exhibit B)(Clark, Shauna) (Entered: 03/21/2023) |
| 05/03/2023 | 19 (p.149) | MOTION to Quash *Deposition Notices and for Protective Order* by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.59) Exhibit B, # 3 (p.61) Exhibit C, # 4 (p.63) Exhibit D, # 5 (p.64) Exhibit E, # 6 (p.65) Exhibit F, # 7 (p.69) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Clark, Shauna) (Entered: 05/03/2023) |
| 05/10/2023 | 20 (p.193) | Response in Opposition to Motion, filed by Jerry Clayton Gift, re 19 (p.149) MOTION to Quash *Deposition Notices and for Protective Order* filed by Defendant Anadarko Petroleum Corporation Change of Control Severance Plan, Defendant Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Defendant Occidental Petroleum Corporation *[PLAINTIFF JERRY GIFTS RESPONSE TO DEFENDANTS MOTION FOR PROTECTIVE ORDER AND TO QUASH DEPOSITION NOTICES AND BRIEF IN SUPPORT]* (Gibson, Amy) (Entered: 05/10/2023) |
| 05/10/2023 | | |

| | 21 (p.202) | APPENDIX to 20 (p.193) Response in Opposition to Motion,, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 05/10/2023) |
|---|---|---|
| 05/10/2023 | 22 (p.291) | Proposed Order to 20 (p.193) Response in Opposition to Motion,, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 05/10/2023) |
| 05/17/2023 | 23 (p.293) | REPLY to Response to Motion, filed by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation, re 19 (p.149) MOTION to Quash *Deposition Notices and for Protective Order* filed by Defendant Anadarko Petroleum Corporation Change of Control Severance Plan, Defendant Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Defendant Occidental Petroleum Corporation (Clark, Shauna) (Entered: 05/17/2023) |
| 05/22/2023 | 24 (p.297) | Joint MOTION to Extend Scheduling Order Deadlines *and Continue Trial Setting* by Jerry Clayton Gift. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Gibson, Amy) (Entered: 05/22/2023) |
| 05/23/2023 | | Text Order GRANTING IN PART 24 (p.297) Parties' Joint Motion to Extend Scheduling Order Deadlines. It is ORDERED that the Court's Scheduling Order (Doc. 15) is amended as follows: 1) The parties shall complete all discovery on or before 7/24/2023. Counsel may by agreement continue discovery beyond the deadline, but there will be no intervention by the Court except in extraordinary circumstances, and no trial setting will be vacated because of information obtained in post-deadline discovery. 2) All dispositive motions shall be filed no later than 8/24/2023. Dispositive motions as defined in Local Rule CV-7(c) and responses to dispositive motions shall be limited to twenty (20) pages in length. Replies, if any, shall be limited to ten (10) pages in length with Local Rule CV-7(e). 3) The Final Pretrial Conference for this case is RESET to 1/11/2024 at 3:00 P.M. The parties shall file their pretrial submissions in accordance with the provisions set out in Local Rule CV-16(e). Pretrial submissions shall also be provided in a USB Flash Drive. 4) This case is RESET for jury selection/trial to 2/5/2024 at 8:00 A.M. It is so ORDERED. Entered by Judge Ronald C. Griffin. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 05/23/2023) |
| 06/02/2023 | 25 (p.303) | ORDER DENYING 19 (p.149) Motion to Quash. Signed by Judge Ronald C. Griffin. (kg) (Entered: 06/02/2023) |
| 06/06/2023 | 26 (p.308) | Unopposed MOTION *For Relief From* re 25 (p.303) Order on Motion to Quash by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Clark, Shauna) (Entered: 06/06/2023) |
| 06/08/2023 | 27 (p.312) | ORDER GRANTING 26 (p.308) Motion fro Relief. Signed by Judge Ronald C. Griffin. (kg) (Entered: 06/08/2023) |
| 08/24/2023 | 28 (p.314) | NOTICE of Filing *of Administrative Record* by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation (Attachments: # 1 (p.10) Exhibit A - Part 1, # 2 (p.59) Exhibit A - Part 2, # 3 (p.61) Exhibit A - Part 3, # 4 (p.63) Exhibit A - Part 4, # 5 (p.64) Exhibit A - Part 5)(Clark, Shauna) (Entered: 08/24/2023) |

| | | |
|---|---|---|
| 08/24/2023 | 29 (p.807) | MOTION for Summary Judgment by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # 1 (p.10) Exhibit A, # 2 (p.59) Exhibit B, # 3 (p.61) Exhibit C, # 4 (p.63) Exhibit D, # 5 (p.64) Exhibit E). Motions referred to Judge Ronald C. Griffin. (Clark, Shauna) (Entered: 08/24/2023) |
| 09/05/2023 | 30 (p.896) | Unopposed MOTION for Extension of Time to File Response/Reply as to 29 (p.807) MOTION for Summary Judgment by Jerry Clayton Gift. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Gibson, Amy) (Entered: 09/05/2023) |
| 09/06/2023 | | Text Order GRANTING 30 (p.896) Plaintiff's Unopposed Motion for Extension of Time to File Response. It is ORDERED that Plaintiff's response to Defendants' Motion for Summary Judgment is extended to Friday, September 22, 2023. It is so ORDERED. Entered by Judge David Counts. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 09/06/2023) |
| 09/20/2023 | 31 (p.904) | Unopposed MOTION for Extension of Time to File Response/Reply as to 29 (p.807) MOTION for Summary Judgment *[Unopposed Motion to Extend Summary Judgment Response Deadline by 3 Workdays Due to Sickness]* by Jerry Clayton Gift. (Attachments: # 1 (p.10) Proposed Order). Motions referred to Judge Ronald C. Griffin. (Gibson, Amy) (Entered: 09/20/2023) |
| 09/21/2023 | | Text Order GRANTING 31 (p.904) Plaintiff's Second Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment. Plaintiff's Response is due on or before Wednesday, September 27, 2023, at 5:00 p.m. FURTHER REQUESTS FOR EXTENSIONS WILL BE DENIED. It is so ORDERED. Entered by Judge David Counts. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 09/21/2023) |
| 09/27/2023 | 32 (p.910) | Response in Opposition to Motion, filed by Jerry Clayton Gift, re 29 (p.807) MOTION for Summary Judgment filed by Defendant Anadarko Petroleum Corporation Change of Control Severance Plan, Defendant Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Defendant Occidental Petroleum Corporation (Gibson, Amy) (Entered: 09/27/2023) |
| 09/27/2023 | 33 (p.931) | APPENDIX to 32 (p.910) Response in Opposition to Motion, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 09/27/2023) |
| 09/27/2023 | 34 (p.1045) | APPENDIX to 32 (p.910) Response in Opposition to Motion, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 09/27/2023) |
| 09/27/2023 | 35 (p.1066) | APPENDIX to 32 (p.910) Response in Opposition to Motion, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 09/27/2023) |
| 09/27/2023 | 36 (p.1092) | APPENDIX to 32 (p.910) Response in Opposition to Motion, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 09/27/2023) |
| 09/27/2023 | 37 (p.1130) | APPENDIX to 32 (p.910) Response in Opposition to Motion, by Jerry Clayton Gift. (Gibson, Amy) (Entered: 09/27/2023) |
| 09/28/2023 | 38 (p.1236) | Unopposed MOTION for Leave to File Amended Appendix in Support of Jerry Gift's Response to Defendants' Motion for Summary Judgment by Jerry Clayton Gift. (Attachments: # 1 (p.10) Exhibit Amended Appendix for which Leave to File is |

| | | |
|---|---|---|
| | | Requested, # <u>2 (p.59)</u> Proposed Order). Motions referred to Judge Ronald C. Griffin. (Gibson, Amy) (Entered: 09/28/2023) |
| 10/02/2023 | | Text Order GRANTING <u>38 (p.1236)</u> Unopposed Motion for Leave to File an Amended Appendix in Support of Jerry Gift's Response to Defendants' Motion for Summary Judgment. The Court directs the Clerk of the Court to file the Amended Appendix in Support of Jerry Gift's Response to Defendants' Motion for Summary Judgment that was included as an exhibit to the Moot. Entered by Judge David Counts. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 10/02/2023) |
| 10/02/2023 | <u>39</u><br><u>(p.1547)</u> | AMENDED APPENDIX to <u>32 (p.910)</u> Response in Opposition to Motion by Jerry Clayton Gift. (slt) (Entered: 10/02/2023) |
| 10/02/2023 | <u>40</u><br><u>(p.1852)</u> | Unopposed MOTION for Extension of Time to File Response/Reply as to <u>32 (p.910)</u> Response in Opposition to Motion, *for Summary Judgment* by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # <u>1 (p.10)</u> Proposed Order). Motions referred to Judge Ronald C. Griffin. (Clark, Shauna) (Entered: 10/02/2023) |
| 10/03/2023 | | Text Order GRANTING <u>40 (p.1852)</u> Defendants' Unopposed Motion to File Reply. It is ORDERED Defendants will have up to, and until October 11, 2023, to file a Reply in Support of their Motion for Summary Judgment. It is so ORDERED. Entered by Judge David Counts. (This is a text-only entry generated by the court. There is no document associated with this entry.) (db) (Entered: 10/03/2023) |
| 10/11/2023 | <u>41</u><br><u>(p.1856)</u> | MOTION to Strike <u>39 (p.1547)</u> Appendix *Portions of Plaintiff's Summary Judgment Evidence* by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation. (Attachments: # <u>1 (p.10)</u> Proposed Order). Motions referred to Judge Ronald C. Griffin. (Clark, Shauna) (Entered: 10/11/2023) |
| 10/11/2023 | <u>42</u><br><u>(p.1864)</u> | REPLY to Response to Motion, filed by Anadarko Petroleum Corporation Change of Control Severance Plan, Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Occidental Petroleum Corporation, re <u>29</u><br><u>(p.807)</u> MOTION for Summary Judgment filed by Defendant Anadarko Petroleum Corporation Change of Control Severance Plan, Defendant Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Defendant Occidental Petroleum Corporation (Clark, Shauna) (Entered: 10/11/2023) |
| 10/25/2023 | <u>43</u><br><u>(p.1876)</u> | Response in Opposition to Motion, filed by Jerry Clayton Gift, re <u>41 (p.1856)</u> MOTION to Strike <u>39 (p.1547)</u> Appendix *Portions of Plaintiff's Summary Judgment Evidence* filed by Defendant Anadarko Petroleum Corporation Change of Control Severance Plan, Defendant Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee, Defendant Occidental Petroleum Corporation *[Jerry Gifts Response to Defendants Motion to Strike Portions of Plaintiffs Summary Judgment Evidence and Brief in Support]* (Gibson, Amy) (Entered: 10/25/2023) |
| 10/30/2023 | <u>44</u><br><u>(p.1899)</u> | ORDER DENYING as MOOT <u>41 (p.1856)</u> Motion to Strike <u>41 (p.1856)</u> MOTION to Strike <u>39 (p.1547)</u> Appendix *Portions of Plaintiff's Summary Judgment Evidence*, <u>29 (p.807)</u> MOTION for Summary Judgment ; GRANTING <u>29 (p.807)</u> Motion for Summary Judgment Signed by Judge David Counts. (je3) (Entered: 10/30/2023) |
| 10/30/2023 | | FINAL JUDGMENT. Signed by Judge David Counts. (kg) (Entered: 10/30/2023) |

| | 45 (p.1911) | |
|---|---|---|
| 11/24/2023 | 46 (p.1912) | Appeal of Final Judgment 45 (p.1911) , 44 (p.1899) by Jerry Clayton Gift.*[Notice of Appeal to the United States Court of Appeals for the Fifth Circuit]* ( Filing fee $ 505 receipt number ATXWDC-18133549) (Gibson, Amy) (Entered: 11/24/2023) |
| 11/24/2023 | | NOTICE OF APPEAL following 46 (p.1912) Notice of Appeal (E-Filed) by Jerry Clayton Gift. Filing fee $ 505, receipt number ATXWDC-18133549. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (jb3) (Entered: 11/27/2023) |
| 12/11/2023 | 47 (p.1916) | TRANSCRIPT REQUEST by Jerry Clayton Gift for dates of n/a. Proceedings Transcribed: n/a. Court Reporter: n/a.. (Gibson, Amy) (Entered: 12/11/2023) |

# Tab 2

# Notice of Appeal
# November 24, 2023
# ROA.1912-1915

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| Jerry Clayton Gift, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| *v.* | § | No. 7:22-CV-00122-DC-RCG |
| | § | |
| Anadarko Petroleum Corporation | § | |
| Change of Control Severance Plan, | § | |
| Occidental Petroleum Corporation, | § | |
| and Anadarko Petroleum | § | |
| Corporation Health and Welfare | § | |
| Benefits Administrative Committee, | § | |
| | § | |
|    *Defendants*. | § | |

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Plaintiff Jerry Clayton Gift appeals to the United States Court of Appeals for the Fifth Circuit from the Final Judgment [ECF Doc. 45] and Order [ECF Doc. 44] entered on October 30, 2023.

The parties to the judgment and order appealed from, and the names and addresses of their respective attorneys, are as follows:

| PLAINTIFF | DEFENDANTS |
|---|---|
| Jerry Clayton Gift | Anadarko Petroleum Corporation Change of Control Severance Plan; Occidental Petroleum Corporation; Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee |
| Amy E. Gibson David L. Wiley Gibson Wiley PLLC 1500 Jackson Street #109 Dallas, Texas 75201 | |
| Paul H. Millican Gossett, Harrison, Millican & Stipanovic P.O. Drawer 911 San Angelo, Texas 76902 | Shauna Johnson Clark Kimberly F. Cheeseman Andrew Yeh Norton Rose Fulbright US LLC 1301 McKinney #5100 Houston, Texas 77010-3095 |

Respectfully submitted,

*/s/ Amy Gibson*

_____
Mr. Paul H. Millican
Texas Bar No. 14146700
paulm@ghtxlaw.com

Gossett, Harrison, Millican & Stipanovic
P.O. Drawer 911
San Angelo, Texas 76902
T: (325) 653-3291
F: (325) 655-6838

Ms. Amy E. Gibson
Texas State Bar No. 00793801
amy@gwfirm.com

Mr. David L. Wiley
Texas State Bar No. 24029901
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201
T: (214) 522-2121
F: (214) 522-2126

*Attorneys for Plaintiff*
*Jerry Gift*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on **November 24, 2023**, she filed the foregoing document with the District Clerk for the United States District Court, Western District of Texas, through the CM/ECF System, such that the foregoing document should be served on all parties through their counsel of record as follows:

**Via CM/ECF**

Ms. Shauna Johnson Clark
shauna.clark@nortonrosefulbright.com
Ms. Kimberly F. Cheeseman
kimberly.cheeseman@nortonrosefulbright.com
Mr. Andrew Yeh
andrew.yeh@nortonrosefulbright.com
Norton Rose Fulbright US LLC
1301 McKinney #5100
Houston, Texas 77010-3095

*Attorneys for Defendants*

*/s/ Amy Gibson*

_____

Amy E. Gibson

# Tab 3

# Order
# October 30, 2023
# ROA.1899-1910

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

**JERRY CLAYTON GIFT,**
*Plaintiff,*

**v.**

**MO:22-CV-00122-DC**

**ANADARKO PETROLEUM
CORPORATION CHANGE OF
CONTROL SEVERANCE PLAN,
OCCIDENTAL PETROLEUM
CORPORATION, ANADARKO
PETROLEUM CORPORATION
HEALTH AND WELFARE
BENEFITS ADMINISTRATIVE
COMMITTEE,**
*Defendants.*

## <u>ORDER</u>

In August 2019, Occidental Petroleum Corporation acquired Anadarko Petroleum Corporation.[1] This acquisition set in motion Anadarko's Change of Control Severance Plan ("Plan"). The Plan provided employees a 90-day window to resign for "Good Reasons" and receive severance benefits.[2] "Good Reason" is defined in the Plan to mean, in relevant part, that "the participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained."[3] Plan administration was handled by the Anadarko Petroleum Corporation Welfare Benefits Administrative Committee ("Committee"), which created a good-reason inquiry

---

[1] The Court will use the abbreviation A.R. when citing to facts from the Administrative Record filed as Doc. 28, Ex. A. The Court's will also use the Bates numbering stamp when citing to specific pages.
[2] A.R. at 247.
[3] *Id.* at 245.

form "to allow Participants to inquire as to whether they have incurred a "Good Reason" event without having first resigned employment."[4]

On November 1, 2020, Plaintiff Jerry Gift, who was employed by Anadarko and then Occidental as an Operations Foreman, submitted his good-reason inquiry form, claiming a "Good Reason" event occurred on April 22, 2020, because he was required to perform in a job position, or a substantial job assignment, for which he was not trained.[5] Specifically, Gift claims he was assigned to take on the task of procedure writing and to cover shifts in the Operations Control Center ("OCC") when employees were on leave, which he believes he lacked the training and experience to do.[6]

In July 2020, the Good Reason Subcommittee responded to Gift's inquiry form with a letter, telling him that the situation he described did not constitute a "Good Reason" event under the plan because Gift was not required to perform those tasks. The Subcommittee's letter also noted that it had discussed Gift's job duties with Jay Westre, Midstream Operations Manager, and Eric Miller, who both stated that Gift's assigned tasks were within the duties and responsibilities of an Operations Foreman before the Change of Control and after.[7]

On August 7, 2020, Gift informed the Committee by letter that he was resigning effective that day. Gift included various other documents with his letter, which the Committee treated as a claim for benefits under the Plan.[8] After meeting to discuss Gift's

---

[4] *Id.* at 80.
[5] The Court will not handle the issue of pay reduction because Gift states he never pursued that issue with the committee and has not sued on that issue.
[6] A.R. at 221–225.
[7] *Id.* at 218–220.
[8] *Id.* at 75–97.

23-50862.1900

claim, the Committee informed Gift on December 4, 2020, that his claim for severance benefits had been denied ("Initial Denial Letter"). The Initial Denial Letter identified the documents reviewed by the Committee, detailed the facts and analysis of Gift's claim, and addressed the specific claims made by Gift.[9]

Two weeks later, Gift appealed the Committee's denial decision, repeating that he was not trained or experienced with working in the OCC.[10] But after considering Gift's appeal and all the supporting documents, the Committee again denied Gift's appeal on April 21, 2022 ("Appeal Denial Letter") for the same reasons in the Initial Denial Letter.[11]

Gift sued the Plan, Committee, and Occidental one year later, alleging a denial of benefits claim against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA").[12] Defendants filed the administrative record and now move for summary judgment on Gift's claims.[13] Gift has responded.[14]

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[15] Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the

---

[9] *Id.* at 210–269.
[10] *Id.* at 202–238.
[11] *Id.* at 292–267.
[12] Doc. 1, Ex. B.
[13] Doc. 29.
[14] Doc. 32. Plaintiff's response does not contain page numbers. Therefore, the Court will use the page numbers provided by CM/ECF when citing Plaintiff's response.
[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

3

nonmoving party."[16] Substantive law identifies which facts are material.[17] The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."[18]

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that establish the absence of a genuine issue of material fact.[19] When the nonmovant bears the burden of proof, the movant may discharge the burden by showing that no evidence supports the nonmovant's case.[20] Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."[21] A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment.[22] Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment.[23] The Court must consider all the evidence but "refrain from making any credibility determinations or weighing the

---

[16] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

[17] *Id.*

[18] *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

[19] Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.

[20] *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

[21] *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

[22] *Anderson*, 477 U.S. at 257.

[23] *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).

evidence."[24] "Standard summary judgment rules control in ERISA cases."[25] And in such cases, courts generally limit their review to the administrative record.[26]

### DISCUSSION

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."[27] "A plan administrator's benefit determinations involve two tasks: construing the terms of the plan and determining the facts underlying the benefit claim."[28] Where, as is undisputed here, "the plan expressly confers discretion on the plan administrator to construe the plan's terms, the administrator's construction is reviewed for abuse of discretion."[29] The Court will therefore review the Committee's denial decision for abuse of discretion.

When reviewing an administrator's plan interpretation for abuse of discretion, this Court "must first determine whether the administrator's interpretation is legally correct; if so, the inquiry ends because no abuse of discretion could have occurred."[30] On the other hand, if the administrator's interpretation is not legally correct, the Court must proceed to determine whether the administrator's denial of benefits was an abuse of discretion.[31]

Defendant's motion argues that the Committee's decision to deny Gift's benefit request was legally correct.[32] And even if not legally correct, the Committee's denial was not

---

[24] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).
[25] *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009).
[26] *See LifeCare Mgmt. Services LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013).
[27] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108.
[28] *Chacko v. Sabre Inc.*, 473 F.3d 604, 610 (5th Cir. 2006).
[29] *Id.*
[30] *Id.* at 611 (citing *Aboul–Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001)).
[31] *Id.*
[32] Doc. 29 at 14–16.

an abuse of discretion.[33] Gift pushes back against Defendants' motion with two broad arguments. First, Gift makes the procedural argument that the Committee failed to conduct a full and fair review of his appeal.[34] Second, Gift believes the Committee's interpretation of the plan was not a "fair reading."[35] The Court handles each argument in turn.

## I.    Did Gift receive a full and fair review on his appeal?

"To comply with the 'full and fair review' requirement in deciding benefit claims under ERISA, a claim administrator must provide the specific grounds for its benefit claim denial."[36] Gift claims he did not receive a full and fair review of his OCC claim, alleging that the Committee changed its reasoning when denying his appeal.[37] Specifically, Gift states the Committee "originally denied the claim concerning work in the Kermit OCC because the coverage duty was allegedly voluntary."[38] But "[i]n the final denial letter, the committee raised a new basis for denial—a measurement technician's claim that training was not required to work in the Kermit OCC."[39]

In the Initial Denial Letter, the Committee stated Gift was "asked, but not required, to be in the OCC to have familiarity with the function as a learning experience."[40] In other words, the Committee found that any work performed by Gift in the OCC was voluntary and thus not required to perform job duties for which he was not trained. In comparison, the Appeal Denial Letter inserted more paragraphs with additional reasoning that Gift did

---

[33] *Id.* at 17.
[34] Doc. 32 at 10.
[35] *Id.* at 8–10.
[36] *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393 (5th Cir. 2006).
[37] Doc. 32 at 10.
[38] *Id.* at 10.
[39] *Id.*
[40] A.R. at 211.

not need more training or experience to work in the OCC.[41] Gift points to those other paragraphs as proof the Committee changed its reasons for denying Gift's claims. Yet that argument is unavailing if one reads the Appeal Denial Letter as a whole and in context.

For example, in the first paragraph, the Committee reiterates its previous reason for denying Gift's claim that, based on its review, Gift "[was] not required to work in the OCC. It was optional."[42] Likewise, Gift's argument, which points to the paragraphs on training and experience, omits that all that reasoning responded to Gift's arguments. Indeed, the Committee starts its training and experience reasoning by stating, "[y]ou indicated, however, that working the OCC was not optional."[43]

What's more, the Appeal Denial Letter concludes that "[t]he Committee determined that *even if* you were required to work in the OCC (*instead of it being optional*), you had the requisite knowledge and understanding of Operations to work in the OCC, and no additional training was required."[44] So it appears the Committee reiterated its initial conclusion, before it hypothetically engaged with Gift's training and experience argument on appeal, seeking to thoroughly address all of Gift's arguments, including those raised in his appeal. Thus, in sum, Gift's benefits request was first reviewed by a subcommittee and then twice by the Committee, who explained the same denial decision in detailed letters. This Court therefore holds that the Committee conducted a full and fair review as required by ERISA.

---

[41] *Id.* at 193–194.
[42] *Id.* at 194.
[43] *Id.*
[44] *Id.*

## II.    Was the Committee's decision legally correct?

Because the Committee conducted a full and fair review, the analysis moves to whether the Committee's decision was legally correct. Under the Fifth Circuit's precedent, courts must first analyze whether the administrator's plan interpretation was legally correct.[45] "[I]f so, the inquiry ends because no abuse of discretion could have occurred."[46] Only when the administrator's plan interpretation is not legally correct do courts move on to whether the administrator abused its discretion.[47]

The Fifth Circuit uses three factors when analyzing whether the administrator's interpretation is legally correct:

> (1) "whether the administrator has given the plan a uniform construction;
>
> (2) whether the interpretation is consistent with a fair reading of the plan; and
>
> (3) any unanticipated costs resulting from different interpretations of the plan."[48]

Here, Defendants move for summary judgment, arguing that Gift possesses no evidence that supports or even addresses the above factors.[49] Gift responded, but it's difficult to see where Gift's Response contradicts Defendants' arguments. For example, Gift has provided no evidence that the Committee gave the Plan a "non-uniform construction" by applying it inconsistently to other claimants.[50] Likewise, the Court sees nothing in Gift's Response that pushes a different interpretation, only that he disagrees with the Committee's

---

[45] *See Chacko v. Sabre Inc.*, 473 F.3d 604, 611 (5th Cir. 2006).
[46] *Id.* (citing *Aboul–Fetouh v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001)).
[47] *Id.*
[48] *Crowell v. Shell Oil*, 541 F.3d 295, 314 (5th Cir. 2008)
[49] Doc. 29 at 14–16.
[50] *See Crowell*, 541 F.3d at 314 (noting that the plaintiffs failed to point to any record evidence showing a non-uniform construction of the benefits plan when it was applied to other participants).

conclusion.[51] What's more, any analysis of the second, "fair reading" factor appears muddled at best. In fact, a search of Gift's Response reveals Gift mentions "fair reading" only once—in the resuscitation of the three factors.[52] The Court will, however, interpret Gift's response in the most charitable light as arguing that the Committee's interpretation of "Good Reason" when it denied him severance benefits diverged from a fair reading of the plan.

As mentioned above, benefits are paid under the plan to a Participant who ends their employment for "Good Reason." The Plan defines "Good Reason" to mean, in relevant part, that "the participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained."[53]

The Committee's initial decision to deny Gift's benefits claim was that he was not required to work in the OCC.[54] The Committee arrived at that conclusion after reviewing the materials that Gift provided and speaking with individuals familiar with the Operations Foreman position. And when Gift appealed, adding that he was not trained in managing the OCC, the Committee reiterated that working in the OCC was optional, also adding in response to Gift's arguments that "even if you were required to work in the OCC (instead of it being optional), you had the requisite knowledge and understanding of Operations to work in the OCC, and no additional training was required."[55]

In the most charitable light, Gift appears to argue only that (1) the Committee must make an "individualized assessment" when determining whether there is a need for skill and

---

[51] *Id.* at 316.

[52] Doc. 32 at 6.

[53] A.R. at 245, 247.

[54] *Id.* at 194.

[55] *Id.*

9

training, and (2) the Plan's guidance requires training for new job duties.[56] Although there are many problems with these arguments, the Court limits itself to three.

First, the most glaring problem is that Gift's response does not point to any evidence to combat the conclusion that he was not required to work in the OCC. As stated above, the Committee's initial denial and denial of Gift's appeal were both based on the Committee's conclusion that working in the OCC was optional. So Gift's Response fails to address the Committee's main conclusion.

Second, Gift offers no reasoning for either argument. Indeed, Gift pastes in the Plan's language and its guidance and says this is what the Plan requires.[57] That's it; Gift does not even attempt to show where the Committee's denials failed to make an individualized assessment or how working in the OCC was a new job duty.

Third, Gift's argument that the individualized assessment of skill and training "does not consider generic job titles or job descriptions" is a straw man argument—nowhere does the Committee base its reasoning on generic job titles or descriptions.[58] In fact, quite the opposite: the Committee fills the Appeal Denial Letter with individualized points like "you had the necessary skills and training to work in the OCC," "because of your tenure as an Operations Foreman," and "[t]he Committee understands that you were an experienced Operations Foreman."[59]

Gift's Response therefore fails to point to evidence in the record to support an argument that the Committee's decision was legally incorrect. Gift has failed to point to

---

[56] Doc. 32 at 8–10.
[57] Id.
[58] Id. at 8.
[59] A.R. at 194.

23-50862.1908

"particular facts indicating there is a genuine issue for trial."[60] And "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[61]

## CONCLUSION

In sum, the Committee conducted a full and fair review of Gift's benefits claim. Likewise, the denial decision was legally correct. Accordingly, because the Committee's decision was legally correct, "the inquiry ends because no abuse of discretion could have occurred."[62] Likewise, although Gift alleges at length that the Committee had a conflict of interest, "[o]nly upon reaching this second step must the court weigh as a factor whether the administrator operated under a conflict of interest."[63] As a result, the Court will grant Defendants' Motion for Summary Judgment.[64]

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 29).

---

[60] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986)).

[61] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992); *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005) ("[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived.").

[62] *See Chacko v. Sabre Inc.*, 473 F.3d 604, 611 (5th Cir. 2006).

[63] *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009).

[64] The Court notes that Judge Rosenthal in the Southern District of Texas also recently held that the denial of benefits in a similar case involving the same change of control benefits plan was not an abuse of discretion. *See Lu v. Anadarko Petroleum Corp. Welfare Benefits Admin. Comm.*, No. CV H-22-709, 2023 WL 5254682 (S.D. Tex. Aug. 15, 2023).

It is also **ORDERED** that Defendants' Motion to Strike be **DENIED** as **MOOT**.

(Doc. 41).[65]

It is so **ORDERED**.

SIGNED this 30th day of October, 2023.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[65] Defendants moved to strike two declarations used by Gift that were not a part of the administrative record. Gift used those declarations in the section of his response that argues the Committee abused its discretion. Yet the Court need not reach that argument, because the Court held the Committee's decision was legally correct, thus not even reaching that second step. Accordingly, the issue would now be moot.

23-50862.1910

# Tab 4

# Final Judgment
# October 30, 2023
# ROA.1911

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **JERRY CLAYTON GIFT,**<br>*Plaintiff.* | § § § | |
| **v.** | § § § | **MO:22-CV-00122-DC** |
| **ANADARKO PETROLEUM CORPORATION CHANGE OF CONTROL SEVERANCE PLAN, OCCIDENTAL PETROLEUM CORPORATION, ANADARKO PETROLEUM CORPORATION HEALTH AND WELFARE BENEFITS ADMINISTRATIVE COMMITTEE,**<br>*Defendants.* | § § § § § § § § § § | |

## FINAL JUDGMENT

In accordance with the Court's Order (Doc. 44), Defendants' Motion for Summary Judgment is granted. Because nothing remains in the case to resolve, the Court renders Final Judgment pursuant to Federal Rule of Civil Procedure 58.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment be **GRANTED.**

It is also **ORDERED** that each party bear its own costs.

It is also **ORDERED** that the Clerk of the Court **CLOSE** this case.

It is so **ORDERED**.

SIGNED this 30th day of October, 2023.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE

# Tab 5

# Excerpt: COC Plan Purpose and Good Reason Definition at Issue ROA.1628, 1633

**AMENDED AND RESTATED**
**ANADARKO PETROLEUM CORPORATION**
**CHANGE OF CONTROL SEVERANCE PLAN**

**Introduction**

The Board of Directors of Anadarko Petroleum Corporation (the "Company") recognizes that, from time to time, the Company may explore potential transactions that could result in a Change of Control of the Company. This possibility and the uncertainty it creates may result in the loss or distraction of employees of the Company and its Subsidiaries to the detriment of the Company and its shareholders.

The Board considers the avoidance of such loss and distraction to be essential to protecting and enhancing the best interests of the Company and its shareholders. The Board also believes that when a Change of Control is perceived as imminent, or is occurring, the Board should be able to receive and rely on disinterested service from employees regarding the best interests of the Company and its shareholders without concern that employees might be distracted or concerned by the personal uncertainties and risks created by the perception of an imminent or occurring Change of Control.

In addition, the Board believes that it is consistent with the Company's employment practices and policies and in the best interests of the Company and its shareholders to provide severance compensation for its eligible employees whose employment terminates following a Change of Control.

Accordingly, the Board has determined that appropriate steps should be taken to assure the Company of the continued employment and attention and dedication to duty of its employees and to seek to ensure the availability of their continued service, notwithstanding the possibility or occurrence of a Change of Control.

Therefore, in order to fulfill the above purposes, the following plan, originally adopted as of January 29, 1998, is hereby adopted as amended and restated herein, effective as of the Effective Date.

ARTICLE I
ESTABLISHMENT OF AMENDED AND RESTATED PLAN

As of the Effective Date, the Company hereby amends and restates this separation compensation plan known as the Anadarko Petroleum Corporation Change of Control Severance Plan, as set forth in this document.

ARTICLE II
DEFINITIONS

As used herein, the following words and phrases shall have the following respective meanings, unless the context clearly indicates otherwise.

Date Filed: 02/27/2024   Page: 36   Document: 30   Case: 23-50862

23-50862.1628

Occidental Gift
Occidental 000240

Date Filed: 02/27/2024       Page: 37       Document: 30       Case: 23-50862

23-50862.1633

(p)   <u>ERISA</u>.   The Employee Retirement Income Security Act of 1974, as amended, and the regulations and other authority issued thereunder by the appropriate governmental authority.

(q)   <u>Employer</u>.   The Company or a Subsidiary of the Company which has adopted the Plan pursuant to <u>Article V</u> .

(r)   <u>Employment</u>.   Employment means that the individual is employed as an Employee of any Employer.

(s)   <mark>Good Reason</mark>.   Good Reason shall mean the occurrence of any of the following:

(i)   the Participant's duties and responsibilities as an Employee are materially and adversely diminished in comparison to the duties and responsibilities enjoyed by the Participant immediately prior to the Change of Control;

(ii)   the Participant's Base Salary is materially reduced in comparison to the Base Salary enjoyed by the Participant immediately prior to the Change of Control;

(iii)   the aggregate value of the Participant's Base Salary plus Total Target Incentive Compensation is materially reduced in comparison to the aggregate value of the Participant's Base Salary plus Total Target Incentive Compensation immediately prior to the Change of Control;

(iv)   the Participant is required to be based at a location more than 25 miles from the primary location where the Participant was based and performed services immediately prior to the Change of Control;

(v)   the Participant is required by the Employer to take an assignment or position that requires him or her to travel on frequent overnight trips resulting in extended stays away from home on a consistent basis and to a substantially greater extent than was required immediately prior to the Change of Control (this provision excludes assignments or positions that might require temporary travel for a specified, short duration of time, regardless of whether such assignment or position is the result of circumstances related to the Change of Control); or

(vi)   The Participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained.

(t)   <u>Monthly Salary</u>.   The Participant's Annual Compensation divided by twelve (12).

(u)   <u>Participant</u>.   An Employee who meets the eligibility requirements of <u>Section 3.1</u> to participate in the Plan.

APPENDIX 000087

Occidental Gift
Occidental 000245

# Tab 6

# Excerpts: Plan Interpretation Guidance on Good Reason Definition at Issue ROA.1666, 1668-1669, 1670, 1672-1673

---

**Anadarko Petroleum Corporation Change of Control Severance Plan**
**Interpretation by the Plan Administrator and Examples**
**September 10, 2019**

---

The following information has been prepared by the Plan Administrator for Participants in the Anadarko Petroleum Corporation Change of Control Severance Plan ("COC Plan"). All capitalized terms in this document have the meaning provided for in the COC Plan unless a definition is provided below. All information in this document is subject to the terms of the COC Plan document. If there is a difference between the information in this communication and the COC Plan document, the COC Plan document will control.

Participants may have questions regarding what Good Reason means. The term is defined in the COC Plan document as constituting six separate scenarios, but there may be questions about these scenarios.

Whether a Good Reason event has occurred involves a review of the facts and circumstances specific to the individual Participant. This determination will be made by the Plan Administrator under the provisions of Article IX of the COC Plan document. The following discussion is intended to constitute general information regarding the six scenarios and does not constitute a comprehensive discussion of all concepts and principles relating to the Good Reason term.

The examples contained herein are provided as general information and are not binding to any particular situation as the Plan Administrator will evaluate each Good Reason event inquiry based on the facts and circumstances of each situation.

**Material and Adverse Diminishment of Job Duties**

For this Good Reason event, the COC Plan document provides:

> *"the Participant's duties and responsibilities as an Employee are materially and adversely diminished in comparison to the duties and responsibilities enjoyed by the Participant immediately prior to the Change of Control"*

The following discussion includes examples where appropriate:

- The change must be a reduction in duties and responsibilities ("duties"). An increase in job duties does not qualify.

- The change must be adverse. A positive change does not qualify.

  Example: An employee has long complained of being overworked and certain duties are removed to assist the employee. This is not an adverse change.

- The change to duties must be permanent. A short-term reduction in duties due to lack of work, transition, reorganization, or similar matters does not qualify.

  Example: During the integration of Oxy and Anadarko, work slows down while management reviews work processes. Because this is temporary, it does not qualify.

  Example: A supervisor states that one or more job duties held by the employee has been taken away. This is a permanent change.

Note: As described in more detail below, the change must also be material in order to be considered a Good Reason event. Not all changes in job duties will be material.

Occidental Gift
Occidental 000386
DEF-00082116666

**Reductions in Compensation**

The COC Plan document has two separate provisions on this topic:

> *"the Participant's Base Salary is materially reduced in comparison to the Base Salary enjoyed by the Participant immediately prior to the Change of Control"*

>> and

> *"the aggregate value of the Participant's Base Salary plus Total Target Incentive Compensation is materially reduced in comparison to the aggregate value of the Participant's Base Salary plus Total Target Incentive Compensation immediately prior to the Change of Control"*

Given that Oxy is committed to not reducing Base Salary or Total Target Incentive Compensation, no discussion is provided about this scenario.

**Change in Job Location**

The COC Plan document provides:

> *"the Participant is required to be based at a location more than 25 miles from the primary location where the Participant was based and performed services immediately prior to the Change of Control"*

To meet this Good Reason provision, a Participant must be *required* to change location. An inquiry as to whether a Participant wishes to move is not a requirement. In addition, having to attend meetings periodically at another job site is not a change to a Participant's primary location.

**Travel**

The COC Plan document provides:

> *"the Participant is required by the Employer to take an assignment or position that requires him or her to travel on frequent overnight trips resulting in extended stays away from home on a consistent basis and to a substantially greater extent than was required immediately prior to the Change of Control (this provision excludes assignments or positions that might require temporary travel for a specified, short duration of time, regardless of whether such assignment or position is the result of circumstances related to the Change of Control)"*

To meet this Good Reason provision, a Participant must be *required* to take this type of assignment or position.

**Lack of Skill or Training**

The COC Plan document provides:

> *"the Participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained"*

This provision will not be relevant if a Participant is provided with adequate training that would be reasonably expected to allow the Participant to perform the duties of the position.

> Example: An employee is given a new job assignment that is within the employee's traditional field of work and is sent to a week-long training class that is appropriate to prepare the employee to perform the new job duty. This provision has not been met.

APPENDIX 000122

Occidental Gift

PL-OXY-211668

Occidental 000388

Example:  An employee is given a new job assignment that is outside of the employee's traditional field of work and given five days of training.  It is not reasonable to expect that a typical employee could perform the new job duty after only five days of training. This provision has been met.

APPENDIX 000123

Occidental Gift
23-50862.1669
Occidental 000389

| |
|---|
| **Anadarko Petroleum Corporation Change of Control Severance Plan** |
| **Interpretation by the Plan Administrator and Examples** |
| **March 23, 2020** |

The following information has been prepared by the Plan Administrator for Participants in the Anadarko Petroleum Corporation Change of Control Severance Plan ("COC Plan"). All capitalized terms in this document have the meaning provided for in the COC Plan unless a definition is provided below. All information in this document is subject to the terms of the COC Plan document. If there is a difference between the information in this communication and the COC Plan document, the COC Plan document will control.

Participants may have questions regarding what Good Reason means. The term is defined in the COC Plan document as constituting six separate scenarios, but there may be questions about these scenarios.

Whether a Good Reason event has occurred involves a review of the facts and circumstances specific to the individual Participant. This determination will be made by the Plan Administrator under the provisions of Article IX of the COC Plan document. The following discussion is intended to constitute general information regarding the six scenarios and does not constitute a comprehensive discussion of all concepts and principles relating to the Good Reason term.

The examples contained herein are provided as general information and are not binding to any particular situation as the Plan Administrator will evaluate each Good Reason event inquiry based on the facts and circumstances of each situation.

**Material and Adverse Diminishment of Job Duties**

For this Good Reason event, the COC Plan document provides:

> *"the Participant's duties and responsibilities as an Employee are materially and adversely diminished in comparison to the duties and responsibilities enjoyed by the Participant immediately prior to the Change of Control"*

The following discussion includes examples where appropriate:

- The change must be a reduction in duties and responsibilities ("duties"). An increase in job duties does not qualify.
- The change must be adverse. A positive change does not qualify.

  Example: An employee has long complained of being overworked and certain duties are removed to assist the employee. This is not an adverse change.

- The change to duties must be permanent. A short-term reduction in duties due to lack of work, transition, reorganization, or similar matters does not qualify.

  Example: During the integration of Oxy and Anadarko, work slows down while management reviews work processes. Because this is temporary, it does not qualify.

  Example: A supervisor states that one or more job duties held by the employee has been taken away. This is a permanent change.

Note: As described in more detail below, the change must also be material in order to be considered a Good Reason event. Not all changes in job duties will be material.

APPENDIX 000124

Occidental Gift
EX-308821 670
Occidental 000390

## Reductions in Compensation

The COC Plan document has two separate provisions on this topic:

> *"the Participant's Base Salary is materially reduced in comparison to the Base Salary enjoyed by the Participant immediately prior to the Change of Control"*

> and

> *"the aggregate value of the Participant's Base Salary plus Total Target Incentive Compensation is materially reduced in comparison to the aggregate value of the Participant's Base Salary plus Total Target Incentive Compensation immediately prior to the Change of Control"*

The Plan Administrator will evaluate each situation on a case-by-case basis. However, the Plan Administrator has reviewed the communication that will be distributed by Oxy on March 24, 2020 and has determined that the salary reduction, effective April 1, 2020, of 4.9% is not a material reduction under the Good Reason definition in the COC Plan. Additionally, the other changes described therein (including the quarterly production bonus and premiums/incentives) are not included when determining if a Good Reason event occurred and, therefore, none of the changes constitute a Good Reason Event under the COC Plan..

## Change in Job Location

The COC Plan document provides:

> *"the Participant is required to be based at a location more than 25 miles from the primary location where the Participant was based and performed services immediately prior to the Change of Control"*

To meet this Good Reason provision, a Participant must be *required* to change location. An inquiry as to whether a Participant wishes to move is not a requirement. In addition, having to attend meetings periodically at another job site is not a change to a Participant's primary location.

## Travel

The COC Plan document provides:

> *"the Participant is required by the Employer to take an assignment or position that requires him or her to travel on frequent overnight trips resulting in extended stays away from home on a consistent basis and to a substantially greater extent than was required immediately prior to the Change of Control (this provision excludes assignments or positions that might require temporary travel for a specified, short duration of time, regardless of whether such assignment or position is the result of circumstances related to the Change of Control)"*

To meet this Good Reason provision, a Participant must be *required* to take this type of assignment or position.

## Lack of Skill or Training

The COC Plan document provides:

> *"the Participant is required, without the Participant's prior written consent, to perform in a job position, or a substantial job assignment, for which he or she is not skilled or trained"*

APPENDIX 000126

Occidental Gift
DEP08821672
Occidental 000392

This provision will not be relevant if a Participant is provided with adequate training that would be reasonably expected to allow the Participant to perform the duties of the position.

<u>Example</u>:  An employee is given a new job assignment that is within the employee's traditional field of work and is sent to a week-long training class that is appropriate to prepare the employee to perform the new job duty.  This provision has not been met.

<u>Example</u>:  An employee is given a new job assignment that is outside of the employee's traditional field of work and given five days of training.  It is not reasonable to expect that a typical employee could perform the new job duty after only five days of training. This provision has been met.

4

Occidental Gift
EE-000211673
Occidental 000393

# Tab 7

# Declaration of David Gale, Then-Current Head of OCC ROA.1553-1564

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| Jerry Clayton Gift, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | No. 7:22-CV-00122-DC-RCG |
| | § | |
| Anadarko Petroleum Corporation | § | |
| Change of Control Severance Plan, | § | |
| Occidental Petroleum Corporation, | § | |
| and Anadarko Petroleum | § | |
| Corporation Health and Welfare | § | |
| Benefits Administrative Committee, | § | |
| | § | |
| *Defendants*. | § | |

---

**DECLARATION OF PAUL DAVID GALE**

---

1.      My name is Paul David Gale. I go by David. The facts, statements, and opinions in this declaration are true and accurate to the best of my recollection. Unless stated otherwise, the facts, statements, and opinions in this declaration are based on: (a) my personal knowledge, or (b) my developed knowledge from years of training and experience in the oil and gas industry, including pipeline control operations, or (c) both my personal knowledge and my developed knowledge from years of training and experience in the oil and gas industry, including pipeline control operations.

2.      I was informed that *personal knowledge* means I personally observed or experienced something using my own senses, like sight, hearing, smell, touch, feeling. Someone else typed this declaration, but the facts, statements, and opinions in this declaration are my own. Someone else added the blue captions in this declaration. The blue captions are not part of my testimony.

3.      I have not been retained to provide expert testimony in this lawsuit. I have not been employed to provide expert testimony in this lawsuit. I am not an employee of Jerry Gift. I am not an employee of the Anadarko Petroleum Corporation Change of Control Severance Plan, Occidental Petroleum Corporation, or the Anadarko Petroleum Corporation Health and Welfare Benefits Administrative Committee. I am not being paid for my testimony or my time as a witness in connection with this lawsuit.

## introduction

4.      I once served as foreman of the *Anadarko Petroleum Corporation Operations Control Center* located at 831 Southeast Avenue in Kermit, Texas. During my tenure, Occidental Petroleum Corporation acquired Anadarko Petroleum Corporation. After the acquisition and during my tenure, this same pipeline control center became the *Western Midstream Partners LP Operations Control Center*.

5.      I am currently Director of Operations for a consulting firm that, among other services, assesses pipeline companies' control room operations and suggests improvements.

## names and abbreviations

6.      I sometimes use a company trade name, or an employer name as it was known to me, instead of a formal legal name. Here is a list of abbreviations that I sometimes use in this declaration:

| | | |
|---|---|---|
| Anadarko | → | Anadarko Petroleum Corporation |
| Oxy | → | Occidental Petroleum Corporation |
| Oxy-Wes | → | Western Midstream Partners LP |
| OCC | → | Operations Control Center |
| Kermit OCC | → | Operations Control Center at 831 Southeast Avenue Kermit, Texas |
| CRM | → | Control Room Management |
| MAOP | → | Maximum Allowable Operating Pressure |
| API | → | American Petroleum Institute, a trade association for the oil and gas industry that has recommended practices |
| DOT | → | Department of Transportation |
| PHMSA | → | Pipeline and Hazardous Materials Safety Administration |
| RP | → | Recommended Practices |
| SCADA | → | Supervisory Control and Data Acquisition software communications system that helps controllers remotely monitor pipeline systems in an OCC |

APPENDIX 000008

**oil and gas industry & pipeline control operations
training and experience**

7.      I have more than 30 years of experience in the oil and gas industry. I have more than 25 years of experience in pipeline control operations.

8.      Before working in pipeline control operations, I worked about 3 years for Phillips 66 in Pasadena, Texas. Here are examples of my experience there:

> I successfully completed (a) fire training school and (b) a 4-week chemical process technician training program. I work in various operator positions including tank farm, batch process, extrusion, and console operating. I help coordinate multiple plant shutdown and turnaround processes. I help prepare operating equipment for lockout or tagout. I help with plant operations during emergency situations.

9.      I then worked a little over 2½ years as a contractor in various exploratory positions. Here are examples of my contractor experience:

> I gain an in-depth view of what it takes to build a chemical process plant and pipeline. I work in various plants along the Houston ship channel. I worked in various positions during the plant shutdown and turnaround process. I gained general experience in the following trades: boiler-making, pipefitting, instrumentation, millwright, electrical, construction, plant maintenance, and plant operations.

10.      I then work a little over 1½ years with Colonial Pipeline Company in Georgia starting in or around March 1998. Here are examples of my experience there:

> I train extensively for at least 6 months to work as a pipeline controller — then known as a pipeline dispatcher at this company. I successfully completed a pipeline hydraulics training course. I work as a pipeline controller for liquid and gas main lines and stub lines. A main line is like a freeway, and stub lines are like the smaller roads that tie into that freeway. I work with the public during a leak that displaced about 100 families. I develop philosophies related to what is now known as CRM — Control Room Management. *Philosophies* pertains to the underlying reasons or basis for each of the control room management components. One example of a component: roles and responsibilities under abnormal operating conditions.

11.      I then worked a little over 6 years with Teppco in Houston, Texas. Teppco stands for Texas Eastern Products Pipeline Company. Here are examples of my experience there:

> Even with prior controller experience, I train extensively to work as a pipeline controller with Teppco. Training is essential even for experienced controllers because every pipeline system is different. Even within the same company, if you move to a different control room console, the move may require training and OQ — Operator Qualification.

I successfully completed another pipeline hydraulics training course. I work as a Senior Pipeline Controller to control liquid pipelines, natural gas liquid pipelines — those carrying liquids derived from natural gas, and chemical pipelines. I train and mentor controllers. I led the efforts to re-write most of the Standard Operating Procedures. I help commission three new pipelines: (a) a natural gas liquid pipeline, (b) an ethylene pipeline, and (c) a propylene pipeline.

12.     I then work a little over 2 years with Chevron in Bellaire, Texas. Here are examples of my experience there:

Even with prior controller experience, I again trained to work as a pipeline controller with Chevron. I work as a Pipeline Controller to control Chevron and Texaco pipeline assets. I maintain an OSHA certification for Hazardous Waste Operations and Emergency Response Training for my role as an on-scene incident commander. Hazardous Waste Operations and Emergency Response Training has five levels — awareness, operations, technician, specialist, and on-scene incident commander. On-scene incident commander is the highest-level qualification and so requires (a) the most training to become certified and (b) ongoing annual training to remain certified.

13.     I then worked almost 10 years with Spectra Energy and its successor Enbridge in Houston, Texas. Here are examples of my experience there:

Even with prior controller experience, I again trained to work as a pipeline controller with Spectra Energy. I work as a Senior Gas Controller and later as a SCADA, CRM, and Gas Control Coordinator. The gas pipeline systems were for natural gas. But there were also liquified natural gas storage units and liquification plants.

SCADA is a software communications system that helps controllers remotely monitor pipeline systems. SCADA stands for Supervisory Control and Data Acquisition.

CRM stands for Control Room Management. It is the name for the federal Pipeline and Hazardous Materials Safety Administration (PHMSA) regulations. It is also the common name for pipeline operations control room management components. Those components help protect worker safety, public safety, the environment, private property, and public property — regardless of whether some or all the pipelines fall under federal regulation.

I coordinate CRM, such as helping to (a) develop the gas controller CRM plan, (b) assess controller workload as part of fatigue management, (c) reduce controller workload to prevent fatigue and so operator error, and (d) develop and manage the alarm philosophy plan, which is complicated but dictates how you handle pipeline system alarms. I help design the gas operations control center and design and implement the gas controller training program.

APPENDIX 000010

14.      I then worked about 2 years with Anadarko and its successor Wes after Oxy acquired Anadarko. I was the Operations Control Center Foreman between about December 2018 and November 2020, including a period of medical leave following the death of a young employee and having to review video of the incident as part of my job. Here are examples of my experience there:

> I work to improve the pipeline control center operations for natural disasters, gas pipelines, and saltwater pipelines. My work involved developing or redesigning SCADA screens for optimization of controller response. I assisted in prioritizing and setting alarms. A large part of my role was to address gaps within the control center that deviate from typical industry standards under the Pipeline and Hazardous Materials Safety Administration and the American Petroleum Institute. I developed new documentation to support the operations control center, for example, for control room management, fatigue mitigation, and alarm management. I developed several new Standard Operating Procedures and work to create a new OCC controller training program while training, managing, and mentoring OCC personnel.

15.      After that, I worked for about 6 months with iNet LTE as Director of Midstream Sales and Service. Here are examples of my experience there:

> I help with the development of new midstream services while working with external partners to develop applications for midstream customers. Examples include leak detection for saltwater pipelines and other liquids pipelines, alarm management tools, and dashboards for field equipment analytics.

16.      I also worked for a little over a year as a SCADA Services Consultant under contract with Layline Automation, Inc. Again, SCADA is a software communications system that helps controllers remotely monitor pipeline systems. I provide SCADA supervision and coordination. I develop and coordinate training for the SCADA support team.

17.      I am the founder of SCADA Solve LLC, a consulting firm. I currently serve as Director of Operations. The firm provides SCADA and other control room management consulting services. For example, among other services, the firm assesses pipeline companies' control room operations and suggests improvements.

## military experience

18.      I served as a combat engineer 12B10 in the Texas Army National Guard for more than five years.

**industry terms and practices**

**operations control center**

OCC: safety-critical operations

19.     OCC stands for Operations Control Center. It is a safety-critical operation. Its job positions are safety-critical job positions. It operates 24-7: day and night, every day. What I have said in this paragraph also applies to the Kermit OCC.

20.     OCC employees remotely monitor pipeline flow levels, pipeline pressure levels, and pipeline temperature levels for potential problems. They must understand different constraints and nuances that affect the flow levels, pressure levels, and temperature levels within a pipeline. Employees who perform an operator/controller role must have an understanding of the dynamics and hydraulics of a complex pipeline system. They must understand how to respond to AOCs, Abnormal Operating Conditions. They remotely monitor the movement of products in pipelines and respond to alarms. They must know what to do if a particular alarm comes in. They must know what to do, for example, in the event of an alarm on a pump, a fire, or an emergency shut down. They respond to calls about emergencies in the field. They must have an understanding of how to use the SCADA software communications system that helps controllers remotely monitor the pipeline system. They must understand the OCC computer screens, which visually look like a spiderweb. What I have said in this paragraph also applies to the Kermit OCC.

21.     The Kermit OCC was one of the most complicated because it lacked standardization — it was poorly put together system, and that requires more diligence and more experience to operate. I was working to improve that system.

22.     The foreseeable consequences of OCC errors involve harm to the safety of workers, the public, the environment, private property, public property, and the operator's business. The potential consequences of OCC errors include death, serious injury, property damage, environmental damage, and loss of client contracts. Here are some examples. Errors allowing wet gas to go to a customer may damage plant and equipment and cause loss of customer contracts. Errors may result in blowing a hole in a pipeline. Errors in handling a pipeline leak may damage the environment and cause a vapor cloud that could cause an explosion. Even in areas that do not have high population concentration, you still have pipeline right of ways that cross areas, like roads, that workers and members of the public use. What I have said in this paragraph also applies to the Kermit OCC.

OCC: pipeline hydraulics

23.     I mentioned earlier the need for controllers to have an understanding of pipeline hydraulics. Pipeline hydraulics are directly related to the fluid dynamics within the pipeline. For example, if a valve downstream closes while a pump upstream is running, this will cause a pressure increase between the pump and the closed valve. If the pump keeps running, you will over-pressurize that section, which could result in an excursion of pressure above MAOP — maximum allowable

APPENDIX 000012

operating pressure — and could result in a report to a government agency. Even worse, you could cause a pipeline leak or pipeline rupture.

24.     Here is a different example of hydraulics at work. Say a leak happens. The pressure will drop on any given pipeline segment. How you deal with and respond to hydraulic anomalies depends on the current operating conditions derived by the data being displayed within the SCADA system and available to the controller.

## OCC: CRM components

25.     I mentioned earlier Control Room Management components. These components help explain the complexity and safety-critical importance of OCC work. CRM might include but not be limited to the following:

    1. Roles and Responsibilities
    A) under normal operating conditions
    B) under AOCs — abnormal operating conditions
    C) emergency operating conditions

    2. Controller Information
    A) general information
    B) SCADA displays
    C) point-to-point verification
    D) internal communications plan
    E) back-up SCADA
    F) shift change

    3. Fatigue Management
    A) Shift lengths and rotation
    B) Shiftwork education
    C) Fatigue mitigation

    4. Alarm Management
    A) Alarm Management Plan (AMP)
    B) Safety-related alarm review process
    C) SCADA point review
    D) AMP review
    E) Activity review
    F) AMP deficiencies
    G) Reporting

5. Change Management
A) Communications for physical facility or configuration changes
B) Change management for control room participation

6. Operating Experience
A) Incident reviews
B) Lessons learned

7. Controller Training
A) Training program development and review
B) Training program elements
C) New hire training program
F) Ongoing training program

Kermit OCC: training

26.     Anadarko informed me that it was bringing me on to help establish the Control Room Management plan. The goal was to close the gap on control room management practices — meaning get in line with CRM regulations, which are under the Department of Transportation, Pipeline and Hazardous Materials Safety Administration. And also, to get in line with American Petroleum Institute Recommended Practices. The goal was to make the Kermit OCC compliant as if all pipelines were regulated. So that the only operating difference between DOT pipelines and non-DOT pipelines was the acronym.

27.     At the time, Anadarko had a piece of pipeline that fell under DOT PHMSA CRM regulations. It is typical that if one part is regulated, all of it should be operated as if regulated. That was the expressed goal upon my hire and for it to be adopted as policy and practice during my tenure. Things seemed to change shortly after Oxy acquired Anadarko.

28.     After I started with Anadarko in the Kermit OCC around December 2018, one of the first important things I did was eliminate rotation of field workers through the Kermit OCC. Kermit OCC employees must be on top of things and have to be specially trained. I worked on developing a new training program that would result in employees having an official OQ — Operator Qualification.

29.     But in the meantime, while working on a training program that would result in official OQ for employees, I myself trained Kermit OCC employees. Though I never finished the OQ Program, it took anywhere from 3-6 months to learn the system, and the same to train someone for anyone entering that specific role. At some point during my tenure in 2019 and before I took medical leave, the Kermit OCC employees were trained but did not have the formal OQ. No one can step in to do the work without a minimum of 3 months of training. You cannot just go from any other position in the company with a command to go do that — work in the Kermit OCC. You cannot just place a warm body in the Kermit OCC to fill positions. The Kermit OCC employees have got to be trained. And even then, some people ultimately cannot do the work because they do not understand

hydraulics or cannot work under pressure. You have to watch OCC employees for months to see that they are capable on their own.

### OCC: shift work and fatigue management

30.     Fatigue management is a big part of training and operations in an OCC, including the Kermit OCC. For example, explosions are often due to controller fatigue. The OCC involves shift work. In the Kermit OCC, operations were 24 hours and 7 days a week. Kermit OCC employees worked 12-hour shifts. The Kermit OCC usually had 4 or 5 employees on a shift.

31.     It is well-known in the oil and gas industry that this kind of shift work takes a physical and mental toll on workers. Efforts to mitigate and control fatigue are essential, including proper staffing and workload. In light of that, you should not overwork an OCC employee for the benefit of someone else who is just in the OCC to gain experience. Again, I put a stop to rotating field employees through the Kermit OCC. Again, Kermit OCC employees must be on top of things and have to be specially trained.

32.     Moving from day work to shift work is also a safety issue. Fatigue management comes into play. OCC workers need to be trained in fatigue. Someone moving from day shift goes from 8-9 hours a day to 12 hours a day, higher stress, and a greater physical toll.

### OCC phones

33.     Sometimes an OCC has people who handle calls for the trucks. The Kermit OCC had contractors handling those calls. For Kermit OCC employees who handled calls, those employees needed to understand what to do to respond to emergent issues.

### measurement technician

34.     Based on my experience described in this declaration, a measurement technician is responsible for measurement computers and measuring — the metering of — product coming in and product going out.  Measurement technicians and OCC employees, including Kermit OCC employees, have completely separate roles. Those roles do not intersect. They are not in the same wheelhouse.

### operations foreman

35.     Based on my experience described in this declaration, *Operations Foreman* and *Foreman* are both generic terms for manager. There are different kinds of operations foremen in the oil and gas industry. There were different kinds of operations foremen during my tenure at Anadarko and its successor Oxy-Wes. For example, I was the Kermit OCC Foreman. An operations foreman of any type must undergo training to work in an OCC, including the Kermit OCC, for the reasons I have already explained.

**field operations foreman**

36.     Based on my experience described in this declaration, *Field Operations Foreman* and *Field Foreman* are both generic terms for manager over a specific field operation. There are various kinds of field operations foremen. And what they do depends on context.

37.     An analogy is a car assembly line. Someone is watching over the whole car assembly line process. And within the assembly line, there is someone who connects seatbelts and someone overseeing the people who connect seatbelts. The person managing those who connect the seatbelts is like a field operations foreman for seatbelt connection operations. This does not mean they are qualified to perform control functions over the entire operations. They must learn the other pieces of the assembly line and how to respond to upsets created by other areas to keep the assembly line moving.

38.     Field operations are not OCC operations or Kermit OCC operations. The two are very different. Here is an example. Suppose a field operations foreman is good at manually shutting off valves in the field. An OCC employee, including a Kermit OCC employee, must be good at monitoring pipeline hydraulics and alarms and reacting appropriately under pressure with multiple considerations — effect on the rest of the pipeline, effect on upstream operations, effect on downstream operations, and the effect of all of that on the public, the environment, clients, private property, and public property. A field operations foreman of any type must undergo training to work in an OCC, including the Kermit OCC, for the reasons I have already explained.

**safety concerns raised**

39.     During my tenure as Kermit OCC Foreman, I prepared and sent an email expressing safety concerns about a new policy under which untrained individuals would fill in for my trained employees in the Kermit OCC. So as not to pay overtime to existing Kermit OCC employees. I was on medical leave at the time I prepared and sent the email, but I was available to speak on the issue. On the next page is an accurate, black-and-white image of the email I sent, although the original was part of a longer email string:

APPENDIX 000016

**From:** Gale, David <David.Gale@anadarko.com>
**Sent:** Saturday, May 30, 2020 11:51 AM
**To:** Clark, Brett <Brett.Clark@anadarko.com>
**Cc:** De La O, Junior <Junior.DeLaO@anadarko.com>; De La O, Noe <Noe.DeLaO@anadarko.com>; Chavarria, Ruben <Ruben.Chavarria@anadarko.com>; Hollis, Fred <Fred.Hollis@anadarko.com>; Mills, Marty <Marty.Mills@anadarko.com>; Stelzer, Greg <Greg.Stelzer@anadarko.com>; Muniz, Rey <Rey.Muniz@anadarko.com>; Vizcaino, Daniel <Daniel.Vizcaino@anadarko.com>; Reyes, Andy <Andy.Reyes@anadarko.com>; Gift, Jerry <Jerry.Gift@anadarko.com>; Dowdy, Jeremy <Jeremy.Dowdy@anadarko.com>; Cook, Chris <Chris.Cook@anadarko.com>; Templeton, Clint <Clint.Templeton@anadarko.com>; Rantala, Timothy <Tim.Rantala@anadarko.com>; Corralez, Toby <Toby.Corralez@anadarko.com>; Garcia, Katt <Katt.Garcia@anadarko.com>; Borski, Steven <Steven.Borski@anadarko.com>; Lopez, Sion <Sion.Lopez@anadarko.com>; Coleman, Dewayne <Dewayne.Coleman@anadarko.com>; Hernandez, Jacob <Jacob.Hernandez@anadarko.com>; Miller, Eric W <eric_miller2@oxy.com>
**Subject:** Re: PTO Request

Team,

I'm curious why is this being done? I'm only asking as I plan on returning very soon and need to know what is going on and why? I've had many phone calls and concerns over this and am not trying to stir the pot but rather help solve a problem before my return.

In my experience and opinion, this policy is not appropriate behavior for a Midstream central control center, especially without a process for retraining. Are we following CRM regulations or not? As far as I know, no such process has yet been implemented, and mainly because of my absence.

I'm also looking out for both our people and WES and I have an obligation to speak up. Having salaried personnel perform an hourly role is asking for potential legal trouble for WES down the road. For example, Dominion Energy and Enbridge, among many others are facing class legal action for similar types of behaviors. I'm simply saying it could costs WES more down the road in terms of reputation and various financial impacts, which is not a good thing for any of us. What if something happens with one of the untrained individuals working OCC? That is a risk I would avoid altogether.

Are we doing the same thing with field operations? I hear it is different. How is SWD getting approval for OT as needed and not OCC? OCC is dealing with products that are far more dangerous.

My last point is has this issue been addressed with WES upper management in Houston or is it a directive from them? Regardless, I will take my concerns to them and HR prior to my return. I see it as a very critical issue moving forward and something I do not agree with and that I hope is reconsidered.

Thank you,

David Gale
(281)658-6144

Sent from my iPhone

My name is Paul David Gale. I declare under penalty of perjury that my testimony above is true and correct to the best of my recollection.

Executed in New Mexico on September 26, 2023.

_____

Paul David Gale

**Subject:** Re: Jerry Gift Case: Your Testimony

**Date:** Wednesday, September 27, 2023 at 12:10:04 AM Central Daylight Time

**From:** david.gale scadasolve.com <david.gale@scadasolve.com>

**To:** Amy Gibson <amy@gwfirm.com>

**Attachments:** image001.jpg

X1 declaration [david gale] - Updated.docx

I made updates, and it looks alright. I am unable to print, scan, or sign due to me being in a remote location until Friday. The attached copy has my full permission to submit as my declaration.

Thank you,

David Gale



# Tab 8

# Declaration of Jerry Gift
# ROA.1566-1571

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| Jerry Clayton Gift, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | No. 7:22-CV-00122-DC-RCG |
| | § | |
| Anadarko Petroleum Corporation | § | |
| Change of Control Severance Plan, | § | |
| Occidental Petroleum Corporation, | § | |
| and Anadarko Petroleum | § | |
| Corporation Health and Welfare | § | |
| Benefits Administrative Committee, | § | |
| | § | |
| *Defendants.* | § | |

**DECLARATION OF JERRY GIFT**

1.     My name is Jerry Gift. The facts, statements, and opinions in this declaration are true and accurate to the best of my recollection. Unless stated otherwise, the facts, statements, and opinions in this declaration are based on: (a) my personal knowledge, or (b) my developed knowledge from my work experience, or (c) both my personal knowledge and my developed knowledge from my work experience.

2.     I was informed that *personal knowledge* means I personally observed or experienced something using my own senses, like sight, hearing, smell, touch, feeling. Someone else typed this declaration and provided the writing style, but the facts, statements, and opinions in this declaration are my own. Someone else added the blue captions in this declaration. The blue captions are not part of my testimony.

3.     I have not been retained to provide expert testimony in this lawsuit. I have not been employed to provide expert testimony in this lawsuit. I am not an employee of any party to this lawsuit. I am the plaintiff in this lawsuit.

APPENDIX 000020

## abbreviations

4.     Below is a list of abbreviations that I use in this declaration:

| | | |
|---|---|---|
| Anadarko | → | Anadarko Petroleum Corporation |
| Oxy | → | Occidental Petroleum Corporation |
| Oxy-Wes | → | Western Midstream Partners LP |
| OCC | → | Operations Control Center |
| Kermit OCC | → | Operations Control Center at 831 Southeast Avenue Kermit, Texas |

## experience before Anadarko

5.     What follows is a summary of my experience at the time I started work for Anadarko as a GGS Foreman. I sometimes use a company trade name, or an employer name as it was known to me, instead of a formal legal name. At the time, I have some college but do not yet have a college degree. I work for around 5 years as a shop mechanic for Dorman Engine Services. In addition to other duties there, I help repair and rebuild Ajax and Continental pump jack motors.

6.     I then work around 7 years with American Eagle Airlines. For around 6½ years there, I work in different roles in aircraft maintenance — as an aircraft mechanic, a production coordinator, and a maintenance supervisor. For around a ½ year there, I work in the Maintenance, Safety, and Compliance Department as an auditor.

7.     I then work for around 5 years for DCP Midstream Partners, a natural gas company. I work in a few different roles there — field operator, equipment analyst, and level II mechanic. As a field operator, I monitor gas compressors, launch and receive pigs — pipeline inspection gauges that travel inside pipelines and provide important information, and help with one-call requests to locate pipelines. Gas compressors compress natural gas to higher pressure and so get the natural gas ready to be sent somewhere else. As an equipment analyst, I perform emissions tests and perform analysis to predict maintenance failures. As a level II mechanic for the gas compressors, I perform preventive maintenance, perform troubleshooting and repairs for non-routine maintenance,  and perform overhauls as needed.

8.     I then work for around 4 years with Kinder Morgan, an oil and gas company. I work as an operations supervisor over amine treating plant operations and maintenance, in parts of Texas and New Mexico. When I talk, amine sounds like aiming. An amine treating plant strips certain substances from natural gas, like removal of carbon dioxide and hydrogen sulfide.

9.      I then work briefly in succession for two companies: Canyon Midstream Partners, LLC in Goldsmith, Texas and then Fountain Quail Water Services in Kermit, Texas. For both companies, my role is maintenance manager. At Canyon Midstream, for a gas processing plant with amine, dehydration, condensate stabilization, and compression. At Fountain, Quail for water recycling — mostly pumps but also some hydraulic presses.

### experience at Anadarko: GGS Foreman

10.      I then start work with Anadarko as a GGS Field Foreman in January 2019. GGS stands for gas gathering system. As a GGS Foreman, Anadarko assigns me 4 facilities to manage. The inlet of these facilities receives a well stream gas flow that includes water, condensate, and gas. Each facility has a 3-phase separator, a dehydration unit, an amine plant, and a gas compressor plant.

11.      The 3-phase separator separates water, gas, and condensate. The dehydration unit removes additional water. The amine plant removes carbon dioxide and hydrogen sulfide from the gas. The gas compressor plant compresses the gas to increase gas pressure. The Pipeline Foreman manages the associated pipelines. The Plant Foremen manages the plants themselves.

12.      My work includes managing, such as (a) keeping appropriate staffing levels of fieldmen to operate these facilities, (b) making sure fieldmen have the tools and training needed to perform their duties, (c) working with maintenance and electrical foremen to correct issues within the facility, and (d) handling small modifications as needed within the facilities.

13.      After Oxy acquires Anadarko, I continue in the same GGS Field Foreman position for Oxy-Wes. Shortly before that, I finish my bachelor's degree in business management.

14.      During my time as a GGS Field Foreman, my director supervisor is Marty Mills.

15.      I was never a pipeline foreman for Anadarko, Oxy-Wes, or any other company. During my employment, Anadarko and Oxy-Wes had a pipeline foreman over pipeline valves, pipelines, etc. That was never me.

### industry terms and practices

#### upstream

16.      The information in this paragraph is based on my experience in the oil and gas industry. *Upstream* is the segment of the oil and gas business that involves commodity production. A producer's site usually has well pads where commodities are drawn from the formations below the ground. Upstream may also include related activities like exploration.

### midstream

17.     The information in this paragraph is based on my experience in the oil and gas industry. *Midstream* is the segment of the oil and gas business where raw commodities are processed into different commodities and waste streams.

### downstream

18.     The information in this paragraph is based on my experience in the oil and gas industry. *Downstream* is the segment of the oil and gas business where the commodities are processed into usable products — such as in refineries — or are sold to the consumer — such as natural gas for your home.

### operations foreman, foreman

19.     The information in this paragraph is based on my experience at Anadarko and Oxy-Wes. *Operations foreman* and *foreman* both mean manager. Anadarko and Oxy-Wes had different operations foremen, each managing a different segment of operations. The operations foremen included the (a) Operations Control Center Foreman, (b) Gas Gathering System Foreman, (c) Pipeline Foreman, (d) Saltwater Disposal Well Foreman [also sometimes called Water Foreman], and (e) Plant Foreman. Anadarko and Oxy-Wes also had some foremen who were *not* considered operations foremen, like the Maintenance Foreman or the Instrument & Electrical Foreman.

### field operations foreman, field

20.     The information in this paragraph is based on my experience at Anadarko and Oxy-Wes. *Field operations foreman* and *field foreman* both mean manager over a specific segment of the overall field operations. And *field* basically means operations that are not in the office. So, the *field* operations foremen would include most of those I named before — the Gas Gathering System Foreman, Pipeline Foreman, Saltwater Disposal Well Foreman, and Plant Foreman. But the *field* operations foremen would *not* include the Operations Control Center Foreman because that is an office environment, though a highly sophisticated one.

### inside the fence, in the fence

21.     The information in this paragraph is based on my experience at Anadarko and Oxy-Wes. As a GGS Foreman, my work was *inside the fence*. Pipelines go between fences … to and from the fences. I dealt with what was inside the fence. *Inside the fence* or *in the fence* is a term used for midstream facilities roles where your duties and focus are on the facilities, not how the products get there or leave there.

APPENDIX 000023

## GGS

22.     The information in this paragraph is based on my experience at Anadarko and Oxy-Wes. GGS stands for gas gathering system. This system is used to gather low pressure gas, do some treating, and increase gas pressure so the gas is ready to go elsewhere. My explanation above is an example of how the system may work in general, and did work at Anadarko and Oxy-Wes. Again: A 3-phase separator separates water, gas, and condensate. A dehydration unit removes additional water. An amine plant removes carbon dioxide and hydrogen sulfide from the gas. The gas compressor plant compresses the gas to increase gas pressure. Toward the end of my employment, the amine plants were largely idle due to amine plants at large processing facilities that made these amine plants redundant.

## OCC

23.     Before working at Anadarko and Oxy-Wes, I sometimes called in to gas control if an incident happened. I did not understand what a control center did other than that — take incident calls. In fact, when I wanted to go work for Anadarko, I applied for several jobs including Kermit OCC Foreman. Anadarko rightfully rejected me for that position because I was not qualified or trained to do the work. I did not know what I did not know at the time.

24.     While working at Anadarko and Oxy-Wes, I develop a basic understanding of the Kermit OCC from an organizational standpoint. To be clear, I have zero experience in any OCC, much less the Kermit OCC. I am just talking about an understanding of the organizational structure and function of different pieces like the Kermit OCC. I explain this in the next paragraph.

25.     At the time I start work with Anadarko, David Gale is the OCC Foreman. At the time my employment ends with Oxy-Wes, David Gale is the OCC Foreman. He had a training program for people who became OCC operators. They train for 3-6 months. They have drills. This is serious stuff. To make sure when it hits the fan, they know how to handle it. The first call is to Kermit OCC any time there is an incident, like fire, injury, car crash, so Kermit OCC can direct the needed emergency response. Kermit OCC employees control the pipeline gas flows and make sure all products are moving like they need to be moving. If you do not know what you are doing and move the wrong valve, you can cause an explosion or kill someone, or you can direct gas to the wrong place.

## measurement technician

26.     The information in this paragraph is based on my experience at Anadarko and Oxy-Wes. So, raw products come in, and separated products go out during operations. When liquids are separated, all those liquids equate to money. The measurement technician reads meters to make sure there is a balance between what comes in and out.

APPENDIX 000024

procedure writer

27.     The information in this paragraph is based on my experience at Anadarko and Oxy-Wes. During my employment at Anadarko and Oxy-Wes, there was a specific person whose job was, or included, procedure writer — as in, the actual writing part. Anadarko informed me of this as early as my job interview. During the interview, I let Anadarko know that I was not an engineer or a procedure writer. And the Anadarko response was not to worry because they had people in place for those things.

28.     Procedure writer is different from those who test and approve procedures, provide input on procedures, or serve as a subject matter expert on procedures. Procedure writer does the writing — an independent skill set. The skill set is important because employees and agencies like OSHA read or rely on those procedures. For example, I can change the air compressor on a 2007 Jeep Wrangler. But I cannot write the *Chilton* repair manual on how to change the air compressor on a 2007 Jeep Wrangler. The doing and the testing and the training and the writing are entirely different skill sets. My good reason inquiry is an example of how I write.

no OCC training offered

29.     I was never offered training to be able to handle work in the Kermit OCC ... or any OCC.

**My name is Jerry Gift. My date of birth is October 29, 1980. I declare under penalty of perjury that my testimony above is true and correct to the best of my recollection.**

**Executed in Andrews County, Texas on September 26, 2023.**

_____
Jerry Gift

APPENDIX 000025

23-50862.1571

# Tab 9

# Excerpts: Good Reason Inquiry
# ROA.1540-1543, 1697, 1690

# ANADARKO PETROLEUM CORPORATION
## CHANGE OF CONTROL SEVERANCE PLAN
## GOOD REASON INQUIRY FORM

On August 8, 2019, Occidental Petroleum Corporation ("Oxy") acquired Anadarko Petroleum Corporation ("Anadarko") pursuant to that certain merger agreement by and among Anadarko, Oxy and a subsidiary of Oxy ("the Merger Agreement"), which acquisition constituted a Change of Control under the Anadarko Petroleum Corporation Change of Control Severance Plan (the "COC Plan"). Among other things, the COC Plan provides that Participants may resign their employment within 90 days of a Good Reason event occurring and receive Separation Benefits from the COC Plan. The option to resign for a Good Reason event is available only for such events occurring before August 9, 2020.

The COC Plan allows Participants to resign their employment and claim Severance Benefits under the COC Plan if the Participant incurs a Good Reason event. This Good Reason Inquiry Form ("Form") has been approved by the Plan Administrator to allow Participants to inquire as to whether they have incurred a Good Reason event without having first resigned employment. All capitalized terms in this Form have the meaning provided for in the COC Plan unless a definition is provided in this Form.

If you believe you have experienced a "Good Reason" event as defined under the COC Plan and you have not resigned your employment, please complete and submit this Form to the address below. For more information about the Good Reason provision, including a discussion and examples, please click here. As stated in the Summary Plan Description, you may be entitled to Separation Benefits *"if your employment terminates for Good Reason within one year after the occurrence of a Change of Control, provided that you initiate the termination of your employment within 90 days of the event triggering your right to terminate for Good Reason."* **By signing and submitting this Form, you confirm your desire and intent to initiate the termination of your employment.**

All determinations of Good Reason will be made by the Plan Administrator in its sole discretion. Please note that the Plan Administrator, in evaluating this Form, may communicate with your supervisor and other individuals who might have knowledge of facts relating to whether a Good Reason event has occurred. As such, your submission of this Form should not be considered a confidential or private matter.

In those cases where the situation is clear and the Plan Administrator can readily determine that a Good Reason event has occurred, you will be promptly notified that the circumstances you reported constitute a Good Reason event under the COC Plan. Company management will contact you separately regarding your last day of work ("Last Day"). Your Last Day will be determined by the Company in order to provide for an orderly transition, but in no case will your last day of work be later than 90 days after the Good Reason event occurred.

At any time prior to your Last Day, you may rescind your resignation by sending a notice to GoodReason@oxy.com stating that you rescind your Good Reason resignation. If you timely

Occidental Gift
Occidental 000221

rescind your Good Reason resignation, you will remain an employee under the same terms and conditions and with continued participation under the COC Plan, except that you will not be able to assert the Good Reason event submitted in this Form as a severance event under the COC Plan (if 90 days have passed since it occurred).

In cases that are less clear or are lacking in merit, the Plan Administrator will advise you that it cannot be readily determined that a Good Reason event has occurred. You then have the option, in your complete discretion, of resigning your employment within 90 days of the Good Reason event that you believe may have occurred and filing a formal claim for benefits as a Claimant under Section 9.2 of the COC Plan. Your claim for benefits will then be administered by the Plan Administrator under Article IX of the COC Plan document.

In all cases of Good Reason assertion, in order to receive Severance Benefits under the COC Plan, (i) the Plan Administrator must determine that a Good Reason event has occurred, (ii) you must terminate your employment within 90 days of the occurrence of the Good Reason event, and (iii) you must execute and not revoke the release of claims agreement that will be provided by Oxy.

For additional information on the process of making a Good Reason Inquiry, please also here.

| Name: Jerry Gift | | Employee ID: |
|---|---|---|
| Address: 1201 NW 16th St | | |
| City: Andrews | State: TX | Zip: 79714 |
| Title: Operations Foreman | Work Location: Kermit | |
| Supervisor Name: Marty Mills | | |
| Email Address: jerry.gift @ westernmidstream.com | | |

Under the COC Plan, you may be eligible for Severance Benefits if, **prior to August 9, 2020**, you experience any of the events detailed in the chart below. Please indicate which Good Reason event you believe applies to your situation, including the date on which such event first occurred, and provide any and all additional details in the space provided on page 3. If you need more space, please attach an extra sheet.

Date on which you believe the Good Reason event first occurred: 4-22-2020

| | |
|---|---|
| | Your duties and responsibilities were materially and adversely diminished in comparison to your duties and responsibilities immediately prior to closing |
| | Your Base Salary was materially reduced in comparison to your Base Salary immediately prior to closing |
| | The aggregate value of your Base Salary plus Total Target Incentive Compensation was materially reduced in comparison to the aggregate value of your Base Salary plus Total Target Incentive Compensation immediately prior to closing |

Occidental Gift
Occidental 000222

| | |
|---|---|
| | You are required to be based at a location more than 25 miles from the primary location where you were based and performed services immediately prior to closing |
| | You were required to take an assignment or position that requires travel on frequent overnight trips resulting in extended stays away from home on a consistent basis and to a substantially greater extent than immediately prior to closing (this excludes assignments or positions that might require temporary travel for a specified, short duration of time, regardless of whether such assignment or position is the result of circumstances related to the transactions contemplated by the Merger Agreement) |
| ✓ | You are required to perform in a job position, or a substantial job assignment, for which you are not skilled or trained |

Provide any and all additional detail supporting the Good Reason event in the space below:

Our procedure writer was offered and accepted a VSP. This position was not backfilled and the task of Procedure writting fell on the foremen. I was first asked and informed that I must take on the task of Procedure writting in April and I first had to write a procedure on 4-22-2020. I was not trained nor hired to perform this task. Also on 6-1-2020 I was informed that I am expected to cover 12 hour shifts left open by hourly employees who are on leave. These shifts are in the Control Center which I have zero experience or training in. When I expressed concern I was told this is not negotiable.

The above is in addition to losing 20 hours of PTO and 26 days off due to the elimination of the 9/80 schedule. Also losing $7500 in tuition Reimbursment.

*[Signature Page to Follow]*

Page **3** of **6**

Occidental Gift
Occidental 000223

**SIGNATURE**

By signing this Form, I agree that submitting this Form serves as my notice of resignation and that submitting this Form does not guarantee that I will receive severance benefits under the COC Plan. If the Plan Administrator determines that a Good Reason event has occurred, I understand that I will be resigning my employment on the Last Day identified by the Company but that I will have the option of rescinding my resignation as set forth in this Form.

I acknowledge that this is not a claim for benefits under Section 9.2 of the COC Plan. I further acknowledge that I have received and have read the *Anadarko Petroleum Corporation Change of Control Severance Plan Summary Plan Description* and the *Anadarko Petroleum Corporation Change of Control Severance Plan document.*

By: _____

Printed Name: _Jerry Gift_____

Date: _6-16-2020_____

**Submit your completed form to: GoodReason@oxy.com or APC Change of Control Severance Plan, 5 Greenway Plaza, Suite 110, Houston, TX 77046, Attn: Health and Welfare Benefits Administrative Committee.**

Occidental Gift
Occidental 000224

**Archived:** Tuesday, July 14, 2020 5:01:56 PM
**From:** Clark, Brett
**Sent:** Mon, 1 Jun 2020 18:09:21
**To:** Muniz, Rey; Vizcaino, Daniel; Reyes, Andy; Gift, Jerry; Dowdy, Jeremy S; Cook, Chris E; Templeton, Clint; Delao, Junior; De La O, Noe
**Cc:** Chavarria, Ruben; Hollis, Fred; Mills, Marty; Stelzer, Greg P
**Subject:** RE: PTO Request
**Sensitivity:** Normal

---

Need PTO coverage in OCC for the following
- June 10-16 Nights
- June 17-20 Days
- July 29-31 (Noe De La O)
- Aug 33-4 (Jr. De La O)

**From:** De La O, Junior <Junior.DeLaO@anadarko.com>
**Sent:** Thursday, May 28, 2020 8:01 AM
**To:** De La O, Noe <Noe.DeLaO@anadarko.com>
**Cc:** Corralez, Toby <Toby.Corralez@anadarko.com>; Garcia, Katt <Katt.Garcia@anadarko.com>; RSC-Kermit OCC DBM <rsckmtmidstrmcr@anadarko.com>; Chavarria, Ruben <Ruben.Chavarria@anadarko.com>; Clark, Brett <Brett.Clark@anadarko.com>; Hollis, Fred <Fred.Hollis@anadarko.com>; Mills, Marty <Marty.Mills@anadarko.com>; Stelzer, Greg <Greg.Stelzer@anadarko.com>; Muniz, Rey <Rey.Muniz@anadarko.com>; Vizcaino, Daniel <Daniel.Vizcaino@anadarko.com>; Reyes, Andy <Andy.Reyes@anadarko.com>; Gift, Jerry <Jerry.Gift@anadarko.com>; Dowdy, Jeremy <Jeremy.Dowdy@anadarko.com>; Cook, Chris <Chris.Cook@anadarko.com>; Templeton, Clint <Clint.Templeton@anadarko.com>; Borski, Steven <Steven.Borski@anadarko.com>; Coleman, Dewayne <Dewayne.Coleman@anadarko.com>; Gale, David <David.Gale@anadarko.com>; Hernandez, Jacob <Jacob.Hernandez@anadarko.com>; Lopez, Sion <Sion.Lopez@anadarko.com>; Rantala, Timothy <Tim.Rantala@anadarko.com>; Serrano, Diego <Diego.Serrano@anadarko.com>; Sierra, Fabian (Ramsey GP) <Fabian.Sierra@anadarko.com>
**Subject:** Re: PTO Request
I can work the 3rd and the 4th
Junior De La O

Anadarko Petroleum Company

On May 28, 2020, at 7:31 AM, De La O, Noe <Noe.DeLaO@anadarko.com> wrote:

> I can cover 7/29/20 – 7/31/20.
> Not sure about the other days, had plans but I'll check.
> *Thanks,*
> **Noe De La O** | *Sr. Field Foreman*
> <image001.png>
> O: (432) 848-6088 | C: (432) 894-1932
> E-Mail: Noe.DeLaO@westernmidstream.com
> **Please Note Change of Email:** Moving forward beginning 05/25/2020 the new Western Midstream email address will be the only email that will be valid.
>
> **From:** Corralez, Toby <Toby.Corralez@anadarko.com>
> **Sent:** Tuesday, May 26, 2020 5:37 AM
> **To:** Garcia, Katt <Katt.Garcia@anadarko.com>; RSC-Kermit OCC DBM <rsckmtmidstrmcr@anadarko.com>; Chavarria, Ruben <Ruben.Chavarria@anadarko.com>; Clark, Brett <Brett.Clark@anadarko.com>; Hollis, Fred <Fred.Hollis@anadarko.com>; Mills, Marty <Marty.Mills@anadarko.com>; Stelzer, Greg <Greg.Stelzer@anadarko.com>; De La O, Noe <Noe.DeLaO@anadarko.com>; Muniz, Rey <Rey.Muniz@anadarko.com>; Vizcaino, Daniel <Daniel.Vizcaino@anadarko.com>; Reyes, Andy <Andy.Reyes@anadarko.com>; Gift, Jerry <Jerry.Gift@anadarko.com>; Dowdy, Jeremy <Jeremy.Dowdy@anadarko.com>; De La O, Junior <Junior.DeLaO@anadarko.com>; Cook, Chris <Chris.Cook@anadarko.com>; Templeton, Clint <Clint.Templeton@anadarko.com>; Borski, Steven <Steven.Borski@anadarko.com>; Coleman, Dewayne <Dewayne.Coleman@anadarko.com>; Gale, David <David.Gale@anadarko.com>; Hernandez, Jacob <Jacob.Hernandez@anadarko.com>; Lopez, Sion <Sion.Lopez@anadarko.com>; Rantala, Timothy <Tim.Rantala@anadarko.com>; Serrano, Diego <Diego.Serrano@anadarko.com>; Sierra, Fabian (Ramsey GP) <Fabian.Sierra@anadarko.com>
> **Subject:** RE: PTO Request
> These are on Days FYI.
>
> *Toby Corralez*
> <image002.png>
> Operations Control Center
> Office Phone: (432) 848-6666
> Control Room Cell: (432) 202-1287
> **Please Note Change of Email:** Moving forward beginning 05/25/2020 the new Western Midstream email address will be the only email that will be valid
>
> **From:** Garcia, Katt
> **Sent:** Monday, May 25, 2020 5:30 PM
> **To:** Garcia, Katt <Katt.Garcia@anadarko.com>; RSC-Kermit OCC DBM <rsckmtmidstrmcr@anadarko.com>; Chavarria, Ruben <Ruben.Chavarria@anadarko.com>; Clark, Brett <Brett.Clark@anadarko.com>; Hollis, Fred <Fred.Hollis@anadarko.com>; Mills, Marty <Marty.Mills@anadarko.com>; Stelzer, Greg <Greg.Stelzer@anadarko.com>; De La O, Noe <Noe.DeLaO@anadarko.com>; Muniz, Rey <Rey.Muniz@anadarko.com>; Reyes, Andy <Andy.Reyes@anadarko.com>; Gift, Jerry <Jerry.Gift@anadarko.com>; Dowdy, Jeremy <Jeremy.Dowdy@anadarko.com>; De La O, Junior <Junior.DeLaO@anadarko.com>; Cook, Chris <Chris.Cook@anadarko.com>; Templeton, Clint <Clint.Templeton@anadarko.com>; Borski, Steven <Steven.Borski@anadarko.com>; Coleman, Dewayne <Dewayne.Coleman@anadarko.com>; Gale, David <David.Gale@anadarko.com>; Hernandez, Jacob <Jacob.Hernandez@anadarko.com>; Lopez, Sion <Sion.Lopez@anadarko.com>; Rantala, Timothy <Tim.Rantala@anadarko.com>; Serrano, Diego <Diego.Serrano@anadarko.com>; Sierra, Fabian (Ramsey GP) <Fabian.Sierra@anadarko.com>
> **Subject:** RE: PTO Request
> Sorry for the confusions folks but this email was to see if any of the Foreman were willing to cover for operators in occ. Management does not want OCC operators working overtime at all. Foreman will be asked to cover for anyone in OCC needing PTO.
>
> *Toby Corralez*
> <image002.png>
> Operations Control Center
> Office Phone: (432) 848-6666
> Control Room Cell: (432) 202-1287
> **Please Note Change of Email:** Moving forward beginning 05/25/2020 the new Western Midstream email address will be the only email that will be valid
>
> **From:** Garcia, Katt <Katt.Garcia@anadarko.com>
> **Sent:** Saturday, May 23, 2020 12:23 PM
> **To:** RSC-Kermit OCC DBM <rsckmtmidstrmcr@anadarko.com>; Chavarria, Ruben <Ruben.Chavarria@anadarko.com>; Clark, Brett <Brett.Clark@anadarko.com>; Hollis, Fred <Fred.Hollis@anadarko.com>; Mills, Marty <Marty.Mills@anadarko.com>; Stelzer, Greg <Greg.Stelzer@anadarko.com>; De La O, Noe <Noe.DeLaO@anadarko.com>; Muniz, Rey

Occidental Gift
Occidental 000030
EEOC0821697

**Archived:** Thursday, July 16, 2020 3:22:48 PM
**From:** Mills, Marty
**Sent:** Mon, 1 Jun 2020 18:22:35
**To:** Cook, Chris Gift, Jerry
**Subject:** OCC coverage
**Sensitivity:** Normal

---

Please review the schedule and volunteer to assist with coverage. You are expected to!

Get Outlook for iOS

Occidental Gift
23-50862.1690
Occidental 000034

# Tab 10

# Excerpts: Submitted Materials for Claim Under COC Plan ROA.392, 405-406, 410

8/7/2020

Health and Welfare Benefits Administrative Committee

Occidental Petroleum Corporation

5 Greenway Plaza, Suite 110

Houston, TX 77046

To whom it may concern,

This letter is in response to the letter dated July 17, 2020 in which the Good Reason Subcommittee of the APC Change of Control severance plan determined that the good reason inquiry form did not constitute a good reason.

In response to Eric Miller and Jay Westre stating that having a Foreman act as a backup OCC operator is a task that was expected both prior to the COC and following the COC the following contrary evidence is provided:

1) The original job description for the Anadarko Field Foreman role that I was hired for.
2) The current Oxy/WES Field Foreman job description that is a current open position.
3) The letter informing me that my skills and qualifications do not fit for Anadarko OCC Foreman Role.
4) The letter from the OCC Foreman that asking Untrained and Unexperienced Field Foreman to work in the OCC not be used as it is questionable on both Safety and Regulatory fronts.

Documents 1 and 2 show that covering PTO for hourly operator in the OCC is not expected as a job function of a Field Foreman either before or following the COC. Document 3 shows that the OCC is not within my skillset as judged by the company. Document 4 shows that my concerns over the request are not only mine but are shared by the trained professional who was hired to lead the OCC.

As outlined in the COC plan I have resigned my position with APC/OXY/WES effective 8/7/2020 which is well within the ninety day time period for filling a claim for the COC good reason. Which occurred on June 1, 2020.

Thank you,

Jerry Gift

(325)812-5257

1201 NW 16th St

Andrews, TX 79714

Jerry.gift@yahoo.com


Petroleum Corporation

## GGS Field Foreman – Delaware Basin Midstream Ops

### Job Summary
The GGS Field Foreman will provide leadership to an assigned team in the daily gathering system activity including the safe, environmentally sound, and cost effective management of compression, dehydration, pumping, and stabilization facilities and related gathering pipeline system duties. This position is in the Delaware Basin Gathering System Team in the Kermit , TX.

### Qualifications
The ideal candidate for this position should possess the following minimum qualifications:
- Minimum 5 years relevant gas gathering system operations experience with 2 years of demonstrated leadership ability in team environment.
- Demonstrated ability to train and coach for performance.
- Must have strong organization, planning, and problem solving skills.
- Excellent verbal and written communication skills required.
- Basic computer skills including proficiency with Microsoft Word and Microsoft Excel required.

### Responsibilities
- Ensure the safety of work practices, procedures and protection of the environment, including compliance with all applicable company, state, and federal safety and environmental regulations.
- Work closely with the senior foremen, supervisors and superintendent on all aspects of Operations.
- Coordinate field activities from daily work activities to project work.
- Manage midstream operations and general maintenance of facilities.
- Ensure the coordination of the work to optimize transportation, minimize downtime, optimize production, and control environmental and safety risks to acceptable levels.
- Direct the work activities of company and contract personnel on daily operations tasks as well as coordinating the activities of other field work such as small construction and maintenance crews.
- Mentor midstream operators (APC and supplemental) in facility operations and pipeline performance monitoring including troubleshooting.
- Acts as liaison between the field personnel and other functional support groups - production, completions, engineering, construction and other operations teams.
- Provide operational input on project design and hazard analysis.
- Assist with budget preparation and control costs.
- Prepare bid documents and maintain costs for all phases of midstream operations such as facility operations, pipeline operations and construction projects.
- Work with company databases and programs such as PDC, PDB, CygNet, SAP, OSI PI, etc.
- Provide support for other supervisory personnel including vacation relief.

### Education
High School Diploma or equivalent required.
Associates Degree, Trade School or Applicable Professional Certifications are preferred.

### Certifications/Licenses
Valid driver's license with no restrictions that would prohibit driving a company vehicle.

### Relocation
This position may be eligible for domestic relocation.

Occidental Gift
EX1068.0005
Occidental 000088

## Travel Requirements
The percentage of travel required for this position is 0 - 10%.

## Work Schedule
This position is eligible for a 5/40 or 9/80 schedule.
This position covers 24-hour operations and must be available for 24/7 on call.
Candidate must live within 75 miles of Kermit, TX.

Anadarko does not offer sponsorship of employment-based nonimmigrant visa petitions for this role.

Occidental Gift
23-cv-00862-006
Occidental 000089

**From:** Gale, David <David.Gale@anadarko.com>
**Sent:** Saturday, May 30, 2020 11:51 AM
**To:** Clark, Brett <Brett.Clark@anadarko.com>
**Cc:** De La O, Junior <Junior.DeLaO@anadarko.com>; De La O, Noe <Noe.DeLaO@anadarko.com>; Chavarria, Ruben <Ruben.Chavarria@anadarko.com>; Hollis, Fred <Fred.Hollis@anadarko.com>; Mills, Marty <Marty.Mills@anadarko.com>; Stelzer, Greg <Greg.Stelzer@anadarko.com>; Muniz, Rey <Rey.Muniz@anadarko.com>; Vizcaino, Daniel <Daniel.Vizcaino@anadarko.com>; Reyes, Andy <Andy.Reyes@anadarko.com>; Gift, Jerry <Jerry.Gift@anadarko.com>; Dowdy, Jeremy <Jeremy.Dowdy@anadarko.com>; Cook, Chris <Chris.Cook@anadarko.com>; Templeton, Clint <Clint.Templeton@anadarko.com>; Rantala, Timothy <Tim.Rantala@anadarko.com>; Corralez, Toby <Toby.Corralez@anadarko.com>; Garcia, Katt <Katt.Garcia@anadarko.com>; Borski, Steven <Steven.Borski@anadarko.com>; Lopez, Sion <Sion.Lopez@anadarko.com>; Coleman, Dewayne <Dewayne.Coleman@anadarko.com>; Hernandez, Jacob <Jacob.Hernandez@anadarko.com>; Miller, Eric W <eric_miller2@oxy.com>
**Subject:** Re: PTO Request

Team,


I'm curious why is this being done? I'm only asking as I plan on returning very soon and need to know what is going on and why? I've had many phone calls and concerns over this and am not trying to stir the pot but rather help solve a problem before my return.


In my experience and opinion, this policy is not appropriate behavior for a  Midstream central control center, especially without a process for retraining. Are we following CRM regulations or not? As far as I know, no such process has yet been implemented, and mainly because of my absence.


I'm also looking out for both our people and WES and I have an obligation to speak up. Having salaried personnel perform an hourly role is asking for potential legal trouble for WES down the road. For example, Dominion Energy and Enbridge, among many others are facing class legal action for similar types of behaviors. I'm simply saying It could costs WES more down the road in terms of reputation and various financial impacts, which is not a good thing for any of us. What if something happens with one of the untrained individuals working OCC? That is a risk I would avoid altogether.


Are we doing the same thing with field operations?  I hear it is different. How is SWD getting approval for OT as needed and not OCC? OCC is dealing with products that are far more dangerous.


My last point is has this issue been addressed with WES upper management in Houston or is it a directive from them? Regardless, I will take my concerns to them and HR prior to my return. I see it as a very critical issue moving forward and something I do not agree with and that I hope is reconsidered.



Thank you,


David Gale
(281)658-6144

Sent from my iPhone


On May 28, 2020, at 10:24 AM, Garcia, Katt <Katt.Garcia@anadarko.com> wrote:

Occidental Gift
DEF00082140
Occidental 000093

# Tab 11

# Excerpts: Submitted Materials for Appeal Under COC Plan ROA.521-524

12/18/2020

Health and Welfare Benefits Administrative Committee

Occidental Petroleum Corporation

5 Greenway Plaza, Suite 110

Houston, TX 77046

To whom it may concern,

This letter is written as a formal appeal to the denial of my Anadarko Corporation Change of Control claim dated 12/4/2020 and received 12/14/2020. I am appealing the decision about the procedure writing and the backfilling of PTO for hourly operators in the OCC.

**Procedures**

The reasons listed for the denial further support my claim. When I was an Operations Foreman for Anadarko Petroleum, I never wrote procedures. In fact, the process for new procedure was:

1) The ASMITRN Coordinator would write the procedure
2) I would work to verify the procedure.
3) If the procedure were not accurate, I would take the procedure back to the ASMITRN Coordinator to be rewritten.
4) If the procedure were correct, I would train my employees on the procedure.

When I was hired to the Operations Foreman role, I did not have any procedure writing training or experience.

When Oxy offered the ASMITRN Coordinator a VSP and he took it, the job of procedure writing fell upon the Operations Foreman. So, stating that the committee feels it is typical bolsters the claim that it is typical for Oxy and it was not typical for Anadarko, which in and of itself qualifies me for the COC separation benefits.

**OCC**

I indicated that I was not qualified to work in the OCC. I have worked in Natural Gas for 20 years and have not spent one hour in a control center. I also feel it is quite disingenuous to expect an OCC that is short staffed by having operators on PTO to provide adequate training or offer the learning experience Jay Westre offers. Also, the expectation that individuals who are not used to working nightshift would garner any fruitful learning on nightshift is questionable at best. This was never expected to be a learning environment and was only an effort to have bodies in the OCC and reduce overtime expenses.

Furthermore, the reporting structure for my work group was I reported to Marty Mills, who reported to Brett Clark, who then reported to Jay Westre. Jay Westre stated that "Operations Foremen would need to back fill PTO for OCC Operators", he also started that this was "not negotiable". Brett Clark stated

Occidental Gift
EX0008151
Occidental 000202

that "it would be better to volunteer than to be voluntold". Marty mills expressed that this was an Overtime reduction effort and that I was expected to do my part. This language does not support the claim that I was "asked, but not required".   Also, once again the statements that Say Oxy feels it is beneficial for Operation Foreman to gain this Knowledge once again bolster the fact that this was not an assignment under Anadarko and should qualify for COC separation benefits.

I feel that I did experience Good Reason event because I was required to perform substantial job assignments for which I was not skilled or trained.

Thank you,

Jerry Gift

(325)812-5257

1201 NW 16th St

Andrews, TX 79714

Jerry.gift@yahoo.com

Enclosed:

1) General Affidavit concerning procedure process
2) General Affidavit concerning OCC discussions
3) Email Highlighting statements about OCC coverage.

CC: Paul Millican, PC

paulm@ghtxlaw.com

(325)653-3291

# General Affidavit

**STATE OF TEXAS**

**COUNTY OF ANDREWS**

      PERSONALLY, came and appeared before me, the undersigned Notary, the within named Jerry Gift, who is a resident of Andrews County, State of Texas, and makes his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts, and things set forth are true and correct to the best of his knowledge:

The reporting structure for my work group was I reported to Marty Mills, who reported to Brett Clark, who then reported to Jay Westre. Jay Westre stated that "Operations Foremen would need to back fill PTO for OCC Operators", he also started that this was "not negotiable". Brett Clark stated that "What Jay want he will get" and that "it would be better to volunteer than to be voluntold". Marty mills expressed that this was an Overtime reduction effort and that I was expected to do my part.

DATED this the 18th day of December, 2020

_____
Signature of Affiant

Sworn to subscribed before me this 18th day December , 20 20

**JESSICA MARIE GUTIERREZ**
NOTARY PUBLIC
STATE OF TEXAS
ID # 13146574-2
My Comm. Expires 02-26-2022

NOTARY PUBLIC

My commission expires:

2/26/2022

Occidental Gift
Occidental 000204

# General Affidavit

**STATE OF TEXAS**

**COUNTY OF ANDREWS**

 PERSONALLY, came and appeared before me, the undersigned Notary, the within named Jerry Gift, who is a resident of Andrews County, State of Texas, and makes his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts, and things set forth are true and correct to the best of his knowledge:


When I was an Operations Foreman for Anadarko Petroleum, I never wrote procedures. In fact, the process for new procedure was:

1) The ASMITRN Coordinator would write the procedure
2) I would work to verify the procedure.
3) If the procedure were not accurate, I would take the procedure back to the ASMITRN Coordinator to be rewritten.
4) If the procedure were correct, I would train my employees on the procedure.

When I was hired to the Operations Foreman role, I did not have any procedure writing training or experience.


DATED this the 18th day of December, 2020

_____

Signature of Affiant

Sworn to subscribed before me this ____ day _____, 20 __

JESSICA MARIE GUTIERREZ
NOTARY PUBLIC
STATE OF TEXAS
ID # 13146574-2
My Comm. Expires 02-26-2022

**NOTARY PUBLIC**


My commission expires:

2/26/2022

Occidental Gift
Occidental 000205